**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 704 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated November |
| | : | 26, 2014 in the Court of Common Pleas, |
| | : | Criminal Division, Philadelphia County |
| v. | : | at Nos. CP-51-CR-0508652-1999, CP- |
| | : | 51-CR-0607431-1999 and CP-51-CR- |
| | : | 1008141-1999. |
| BERNARD COUSAR, | : | |
| | : | |
| Appellant | : | SUBMITTED: March 15, 2016 |


**OPINION**


**JUSTICE DOUGHERTY**                    **DECIDED: February 22, 2017**

Bernard Cousar appeals from the order of the Philadelphia Court of Common Pleas denying, without a hearing, the guilt phase claims contained in his petition for relief from his death sentence under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§9541–9546. For the reasons set forth below, we remand to the PCRA court for an evidentiary hearing limited to two issues — whether counsel rendered ineffective assistance for failing to: 1) show the ballistics evidence purportedly tying appellant to a series of crimes and murders was inconsistent; and 2) impeach an eyewitness's in-court identification of appellant with the witness's inability to identify appellant at his preliminary hearing.


**I. Background**

We summarized the underlying facts in our opinion on direct appeal affirming appellant's sentence of death. *Commonwealth v. Cousar*, 928 A.2d 1025 (Pa. 2007). We explained appellant was charged with: 1) shooting and killing Luis Santos during a robbery on April 5, 1999; 2) shooting and killing William Townes during an argument on April 26, 1999; and 3) committing an armed home-invasion burglary and robbery with three conspirators on May 6, 1999. The charges were consolidated for a jury trial; the jury found appellant guilty of two counts of murder and related offenses and sentenced him to death.

With respect to the Santos killing, we noted appellant was identified at trial by four witnesses, one of whom followed appellant after the shooting and saw him enter a rowhome on the 3900 block of Pierce Street. As to the killing of Townes, we noted a woman who sold drugs for Townes (Natisha Evans) testified at trial, over defense objection, that she was robbed at gunpoint of Townes's cash and drugs the night before the murder and identified appellant and one of his conspirators in the home invasion as the men who robbed her. Another witness (Debra Redden) testified she saw appellant shoot and kill Townes during a confrontation that occurred the following night. We dismissed appellant's claim the verdict was against the weight of the evidence based on his challenges to the credibility of the eyewitnesses' testimony. We noted the eyewitnesses were vigorously challenged during cross-examination. We additionally held the court did not err in precluding appellant's proffered evidence showing a number of potential eyewitnesses, who did not testify at trial, failed to identify appellant in a line-up.

Regarding the home invasion, the developed facts indicated appellant was captured by police after fleeing the front door of the subject property, and two conspirators who fled through a rear window were apprehended next-door to the

property.[1]  Also, two handguns were seized in the alley behind the property.  Frank Schoenberger, the victim of the invasion/robbery, discovered a handgun the intruders left behind in his basement.  We noted the gun left behind was identified by "police firearms experts" as "the weapon used to kill Santos and Townes."  *Cousar*, 928 A.2d at 1029.  On that basis, this Court determined the court did not err in consolidating trial of the separate murders and the home invasion.  We held the "crucial piece of evidence linking the two homicides was the use of the same gun[,]" found at the scene of the home invasion, and the probative value of that evidence outweighed its potential for unfair prejudice.  *Id.* at 1038.  Justice Baldwin wrote a dissenting opinion, joined by Justice Baer, expressing the view that, while it "would not have been error to consolidate the Schoenberger burglary case with one of the murder cases … the two unrelated homicides should have been tried separately."  *Id.* at 1045 (Baldwin, J., dissenting).  In Justice Baldwin's view, "aside from the use of the same gun there was no [permissible] evidence in the Santos [murder] case that would have been relevant in the Townes murder case[.]"  *Id.* at 1046.

Appellant filed a timely petition for relief under the PCRA.  An amended petition was filed by Billy Nolas, Esquire, of the Federal Community Defender Office, raising numerous claims of error and ineffectiveness of counsel.[2]  The parties agreed appellant was entitled to a new penalty hearing; the court, per the Honorable M. Teresa Sarmina,

---

[1] The fourth conspirator, who also fled through a rear window, was never apprehended or identified.

[2] Appellant was represented during the guilt phase by Norman Scott, Esquire, and by Laurence Narcisi, Esquire, during the penalty phase. David Mischak, Esquire, represented appellant on direct appeal.  On December 13, 2013, attorney Scott submitted a sworn and notarized "affidavit" averring he is the attorney who represented appellant in the capital proceedings at issue here, and stating "I will testify and respond to all questions at a hearing ordered by a court, in lieu of an affidavit."  Affidavit of Norman Scott, 12/13/13.

dismissed the remaining (guilt phase) claims without a hearing, and this appeal ensued. Appellant raises nine claims of error which sound primarily in ineffectiveness of trial counsel. He raises one stand-alone claim of appellate counsel's ineffectiveness for alleged conflict of interest.

The facts pertinent to the instant appeal are that three bullet fragments were taken from the body of Townes, one bullet was removed from the body of Santos, and three handguns were discovered at the scene of the home invasion. Three officers from the police Firearms Identification Unit (FIU), Officers Little, Joyce, and Finor examined the bullets and handguns at various times. All three officers entered their findings into FIU reports, which were generated as computerized print-outs.[3]

The guns found in the alley behind Schoenberger's house were one black Bryco semi-automatic .380 caliber pistol, identified as P-1 on the FIU print-outs, and a silver Taurus Brasil .357 magnum revolver, identified as R-1 on the FIU print-outs. At trial, Schoenberger testified R-1 was his gun, taken from his home by the intruders.[4] The gun found in Schoenberger's basement was a black Astra .357 magnum revolver, identified as R-2 on the print-outs.

The print-outs indicate on April 6, 1999, Officer Joyce examined the bullet recovered from Santos's body. On May 14, 1999, Officer Little examined the bullet fragments taken from Townes's body and determined two of the fragments (B-1 and B-2) were fired by a single firearm.[5] That same date, Officer Little compared B-1 and B-2

---

[3] Officer Joyce's print-out report was for FIU case no. 991555. Officer Little's print-out report was for FIU case no. 991854. Officer Finor's print-out report was for FIU case no. 991974.

[4] When interviewed immediately after the robbery/burglary, however, Schoenberger told police the gun taken from his home was a Colt .357 magnum revolver.

[5] The third fragment taken from Townes's body (B-3) lacked sufficient microscopic markings to determine whether it was fired by the same gun as the other fragments.

taken from Townes's body to the single bullet taken from the body of Santos.  Officer Little concluded the bullets recovered from Townes's body and the bullet recovered from Santos's body were fired from the same as yet unidentified gun.

The three guns recovered from the home invasion were examined by Officer Finor.  On July 29, 1999, Officer Finor concluded two of the three bullet fragments taken from Townes's body and the bullet taken from Santos's body were all fired from **R-2**, the black Astra .357 magnum revolver recovered in the basement of Schoenberger's home.  Specifically, the print-out information for "FIREARMS EXAMINER P/O FINOR" for "EXAM DATE 072999" indicates:

> REMARKS: CROSS CHECK: BULLET SPECIMEN B-1 SUBMITTED ON PR [property receipt] # 2180296 (FIU 991555) AND BULLET SPECIMENS B-1 AND B-2 SUBMITTED ON PR#2192162 (FIU 991854) WERE ALL FIRED FROM REVOLVER **R-2** SUBMITTED ON PR#2198306 (FIU 991974).  THERE ARE INSUFFICIENT MICROSCOPIC MARKINGS TO PERMIT A POSITIVE IDENTIFICATION OF B-3 (FIU 991854) AGAINST REVOLVER R-2 (FIU 991974).

FIU Computerized Print-Out, case no. 991974, 7/29/99. (Officer Finor's report) (emphasis added).

However, a separate print-out at FIU case no. 991854 by Officer Little, also generated on July 29, 1999, indicates the bullets recovered from the body of Townes were fired from **R-1**, the silver Taurus Brasil .357 magnum revolver recovered in the alley behind Schoenberger's house.  Specifically, the print-out information for "FIREARMS EXAMINER P/O LITTLE" for "EXAM DATE 072999" indicates:

> REMARKS: ADDENDUM: AS REQUESTED B1 & B2 OF THIS REPORT WAS [sic] COMPARED TO EVIDENCE SUBMITTED ON REPORT 991974 WITH THE FOLLOWING RESULTS: B1 & B2 WERE FIRED FROM **R-1** (991974).

FIU Computerized Print-Out, case no. 991854, 7/29/99. (Officer Little's report) (emphasis added).

Prior to trial, the Commonwealth filed a motion to consolidate based largely on the theory the ballistics evidence warranted joinder of the separate cases. Trial counsel opposed the motion, but did not assert discrepancies existed in the ballistics evidence. Counsel opposed consolidation on the basis the two homicide cases entailed distinct, unrelated motives, and the evidence respecting each was individually weak and inadmissible in the trial of the other. At the hearing on the motion, when counsel argued "I don't know how they associate that gun [found in Schoenberger's basement] with my client[,]" the court replied, "I think the ballistics report is what does that." N.T. 10/22/99 at 7 (unpaginated original). The court, per the Honorable Anne E. Lazarus, granted the motion to consolidate.

At trial, conducted before the Honorable James A. Lineberger, Officer Finor testified as an expert with respect to the firearms identification evidence. The Commonwealth produced the three FIU print-out reports for his review at the outset of his testimony, and the following exchange took place:

> MR. SCOTT (defense counsel): Your Honor, may I just take a look at those, make sure I have exactly the same thing he [Officer Finor] has?
>
> THE COURT: Yes.
>
> (Exhibits shown to defense counsel)
>
> MR. SCOTT: Your Honor, I have ballistic report[s] by Officer Little and Officer Joyce. I don't seem to have a report by Officer Finor.
>
> MS. FISK (assistant district attorney): [Officer Finor] has an extra copy of it. It has previously been provided. It has been provided as well.
>
> THE COURT: Did you find it?

MR. SCOTT: I don't have it. I got those two.

MS. FISK: May I proceed your Honor?

THE COURT: I don't know. Are you ready now?

MR. SCOTT: If I could have a moment your Honor.

(Pause)

MR. SCOTT: Yes, your Honor

THE COURT: All right. Commonwealth.

N.T. 5/4/01 at 65-66.[6]

Officer Finor testified "we have three different reports here" and the "initial examination of [the] projectiles was conducted by Police Officer Joyce and Police Officer Little … prior to my involvement." *Id.* at 82. Officer Finor identified Commonwealth exhibit 16 as the black Astra .357 magnum revolver recovered in the basement of Schoenberger's home. He testified he test-fired bullets from that gun and compared them to the bullet removed from the body of Santos. He concluded the Santos bullet was "fired from this particular revolver [R-2 Astra .357 magnum]" to the exclusion of any other gun. *Id.* at 80. He further testified he compared the three bullet fragments recovered from the body of Townes, and "the first two, B1 and B2, were both identified as being fired from this revolver [R-2, Astra .357 magnum]. And again, that would be to the exclusion of all other firearms." *Id.* at 83. Officer Finor also testified there were nine cartridges in the Bryco semi-automatic pistol (P-1) found in the alley behind Schoenberger's house. His print-out report, however, indicated there were thirteen cartridges in the pistol.

---

[6] The PCRA court opinion confirms the reports admitted at trial were the print-outs corresponding to FIU case no. 991555 (by Officer Joyce), FIU case no. 991854 (by Officer Little) and FIU case no. 991974 (by Officer Finor).

On cross-examination, counsel posed no questions regarding Officer Little's report indicating the bullets recovered from Townes's body were fired from R-1, the silver Taurus Brasil .357 magnum revolver found in the alley behind Schoenberger's home. Counsel did not question Officer Finor regarding the number of cartridges in P-1. Counsel offered no re-cross-examination following questions by the court and re-direct-examination by the Commonwealth.

During closing argument to the jury, the Commonwealth stated:

> Officer Finor looked at that gun and the bullets taken from William Townes'[s] body, he said, that's the gun that killed William Townes. And when he looked at that gun and the bullet taken from Mr. Santos'[s] body, he said, that's the gun that killed Mr. Santos, the same gun …. Want to talk about evidence beyond a reasonable doubt? It has been presented.

N.T. 5/8/01 at 61.


## II. Review standards

We review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. *Commonwealth v. Blakeney*, 108 A.3d 739, 748-49 (Pa. 2014), *citing Commonwealth v. Spotz*, 47 A.3d 63, 75 (Pa. 2012). Our standard of review of a PCRA court's legal conclusions is *de novo. Id.* at 749.

To be entitled to PCRA relief, appellant must establish, by a preponderance of the evidence, his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S. §9543(a)(2). These errors include a constitutional violation or ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.* Additionally, appellant must show his claims have not been previously litigated or waived, and "the failure to litigate the issue prior to or during trial ... or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S.

§9543(a)(3), (a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. §9544(a)(2). An issue is waived if appellant "could have raised it but failed to do so before trial, at trial, ... on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. §9544(b).

Most of appellant's issues are cognizable only as ineffective assistance of counsel claims. In analyzing such claims, we begin with the presumption counsel is effective. *Commonwealth v. Robinson*, 82 A.3d 998, 1005 (Pa. 2013). To prevail on an ineffectiveness claim, appellant must satisfy, by a preponderance of the evidence, the performance and prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In Pennsylvania, we have applied *Strickland* by looking to three elements an appellant must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) appellant suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. *See Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987).

Appellant, who is represented by federal counsel, is raising federal Sixth Amendment claims under *Strickland.* This Court has made clear the Pennsylvania standard for ineffectiveness is the same as *Strickland*, albeit we divide the performance element into two sub-components. *See, e.g.*, *Commonwealth v. Laird*, 119 A.3d 972, 978 (Pa. 2015). A court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; if a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *Robinson*, 82 A.3d at 1005, *citing Strickland*, *supra*; *Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998).

### III. Failure to conduct evidentiary hearing

In a two-paragraph argument, appellant asserts the PCRA court erred in dismissing his guilt phase issues without a hearing, and maintains if this Court determines he is not entitled to relief "on the pleadings" an evidentiary hearing is warranted. Appellant's Brief at 16. Whatever the merit of this assertion, we will address the propriety of the court's dismissal of claims without a hearing as necessary when they arise in the context of the discrete claims presented. We preliminarily note the PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied "'there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings.'" *Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013), *quoting Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011), *quoting* Pa.R.Crim.P. 909(B)(2). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Roney*, 79 A.3d at 604–05, *quoting Commonwealth v. D'Amato*, 856 A.2d 806, 820 (Pa. 2004). As explained in our introductory paragraph, we remand to the PCRA court for a hearing on trial counsel's performance respecting the inconsistent ballistics evidence and failure to impeach an eyewitness.

### IV. Inconsistent firearms reports

Appellant argues alternative theories of relief concerning the inconsistent reports. His ineffectiveness claim alleges, "[i]f the Commonwealth's representation [it disclosed all the reports in pre-trial discovery] is accurate, then [trial counsel] was ineffective for failing to … utilize the contents of the reports before trial to oppose the consolidation of [a]ppellant's three separate cases for trial." Appellant's Brief at 25. Appellant's

alternative issue asserts if the Commonwealth waited until trial to provide a copy of Officer Finor's report, it committed a *Brady* violation "by failing to disclose the complete FIU reports until after consolidation of [a]ppellant's separate offenses had been granted." *Id.* at 39. In sum, appellant asserts "whether [counsel's] failure can be attributed to ineffective assistance of counsel under *Strickland*, or to the Commonwealth's failure to provide discovery consistent with the requirements of due process, the result is the same: [a]ppellant was prejudiced to such a degree that confidence in the outcome of his trial is undermined." *Id.* at 44.

**A. Ineffectiveness.** Appellant first claims, if counsel possessed the conflicting FIU reports pre-trial, he rendered ineffective assistance for failing to use them to challenge the Commonwealth's motion to consolidate. He argues this claim has arguable merit and no reasonable or strategic basis existed not to use the conflicting reports because they would have called into question the reliability and conclusiveness of the ballistics evidence that formed the basis for joining appellant's cases for trial. He claims prejudice on the basis he was wrongfully forced to defend against the cumulative weight of three unrelated offenses at trial.

Appellant further claims counsel rendered ineffective assistance at trial for failing to impeach Officer Finor with Officer Little's conflicting report. Appellant posits the claim has arguable merit, and no reasonable or strategic basis existed for counsel's failure because the FIU examiners' conclusions contradicted each other and undermined the reliability of the ballistics evidence generally, and undermined specifically Officer Finor's testimony indicating the murder victims were killed by bullets fired from R-2 to the exclusion of all other guns.

Appellant also claims counsel was ineffective for failing to use Officer Little's report indicating the murder victims were killed by bullets from R-1 to impeach Schoenberger's trial testimony R-1 was his gun, stolen from him on the night of the home invasion. Appellant further claims counsel was ineffective for failing to confront Schoenberger with his prior statement to police that the gun stolen from his home was a Colt .357 magnum. He asserts the claims have arguable merit and no reasonable basis existed for failing to impeach Schoenberger's testimony with the ballistics reports and his own prior statement to police, as doing so would have cast doubts on his reliability and undermined the evidence linking appellant to the killings of Santos and Townes.

The Commonwealth responds appellant may not rely on boilerplate assertions there was no reasonable or strategic basis for counsel's performance relative to the firearms identification evidence, and maintains the PCRA court properly dismissed the claims without a hearing because appellant failed to show counsel had no reasonable basis for his actions or that appellant suffered *Strickland* prejudice. The Commonwealth's contention is grounded in appellant's failure to proffer evidence, through an affidavit or otherwise, regarding counsel's rationale and strategy.

Specifically, the Commonwealth posits there was no record indication that Officer Little actually conducted his own, separate examination of the relevant projectiles on the same date Officer Finor conducted his examination and comparison. Instead, the Commonwealth asserts there was no plausible reason for Officer Little to do so, and that, in his addendum report he simply made a typographical error in updating his own log to reflect the findings in Officer Finor's log, accidentally typing the incorrect identifier R-1 for the correct identifier R-2. The Commonwealth posits appellant proffered no evidence concerning the scope and outcome of counsel's investigation into the firearms evidence, theorizing that counsel may have spoken to the examiners, learned of the

typographical error, and reasonably decided not to present the error as a contrary expert opinion. Ultimately, the Commonwealth asserts the lack of any proffer as to what the substance of counsel's testimony would be if an evidentiary hearing were conducted is fatal to establishing appellant's ineffectiveness claim.

The Commonwealth further argues appellant failed to demonstrate he was prejudiced because the ballistics discrepancies would not have changed the outcome of trial, given the other properly admitted evidence of appellant's guilt. It asserts appellant's ineffectiveness claim with respect to pre-trial consolidation is incompatible with the test for prejudice which must be established by a showing the verdict would have been different but for counsel's ineffectiveness. The Commonwealth does not respond to appellant's ineffectiveness claims respecting counsel's failure to impeach Schoenberger.

The PCRA court concluded appellant did not demonstrate he was prejudiced by counsel's failure to impeach Officer Finor at trial with Officer Little's report. The court reasoned, "[W]hether this was a typographical error or a legitimate discrepancy in the analysis, [appellant] was ultimately not prejudiced in this case because Officer Little's conclusion also connected appellant to the murders." PCRA Court slip op. at 27. In support of this rationale, the court notes the Taurus revolver (R-1) was found in the alley behind Schoenberger's home "immediately after appellant and his co-conspirators escaped through Schoenberger's back window." *Id.*

Appellant replies the evidence at trial showed he was arrested after fleeing the front door of the Schoenberger residence, and Schoenberger identified R-1 as his gun, stolen during the home invasion. Appellant also asserts the court's analysis fails to consider the prejudice caused by counsel's failure to use the discrepant reports before trial to oppose consolidation.

In recent years, this Court has expressed a preference for an evidentiary hearing on counsel's strategy before determining counsel lacked a reasonable basis for his or her actions or inactions. *Commonwealth v. Colavita*, 993 A.2d 874, 895 (Pa. 2010), *citing Commonwealth v. Spotz*, 870 A.2d 822, 832-33 (Pa. 2005). Corollary to that inclination is our preference for an evidentiary hearing on the reasonableness of counsel's actions or inactions respecting a claim of ineffectiveness prior to a determination that counsel's actions were, in fact, reasonable. *See, e.g.*, *Colavita*, 993 A.2d at 895-96, *citing Spotz*, 870 A.2d at 832, *citing Commonwealth v. Hughes*, 865 A.2d 761, 799 (Pa. 2004) ("[W]e cannot discern whether a reasonable basis existed for counsel's omission. In such circumstances, this Court has declined to divine, in the first instance on appellate review, whether counsel's actions were reasonably based[.]") The Commonwealth suggests, in the face of appellant's failure to present counsel's affidavit regarding his strategy, it is proper to glean a possible reasonable basis. This Court has held, however, where a PCRA petitioner has not elicited whether counsel had a reasonable basis, "this [C]ourt should refrain from gleaning whether such a reasonable basis exists." *Commonwealth v. Duffey*, 855 A.2d 764, 775 (Pa. 2004).

This Court has previously held PCRA hearings are not discovery expeditions, but are conducted when necessary to offer the petitioner an opportunity to prove his explicit assertion of ineffectiveness raising a colorable claim about which there remains an issue of material fact. *Commonwealth v. Sneed*, 45 A.3d 1096, 1107 (Pa. 2012). Particularly when PCRA claims require examination of trial strategy, it is not enough to take a cold record, state alternative choices counsel could have made, and then declare an entitlement to relief. *Id.* Mere conclusory allegations, without some proffer as to what counsel would say in response to the allegations are insufficient to establish entitlement to relief. *Id.* Thus a supporting document from counsel stating his reasons

for the course chosen is generally necessary to establish potential entitlement to a hearing. *Id.* *See, e.g.,* Pa.R.Crim.P. 902(A)(12)(b) (PCRA petition shall contain facts supporting each ground for relief; if supporting facts do not appear of record "affidavits, documents and other evidence showing such facts" to be identified).

Here, it appears appellant sought a statement from trial counsel to explain his strategy, receiving in response an "affidavit" in which counsel averred he would testify at a hearing if ordered; counsel's statement did not provide any explanations regarding his reasons for not using the discrepant reports to challenge consolidation or impeach the Commonwealth's witnesses.[7] Although this Court has dismissed claims of ineffectiveness where appellant has not provided counsel's affidavit, we have indicated we may overlook the failure where appellant adequately explains why he did not submit it. *See Commonwealth v. Marshall*, 812 A.2d 539, 547-48 (Pa. 2002) (significant factor in finding appellant did not establish prior counsel had no reasonable basis for inaction was appellant's failure to provide affidavit, or explanation as to why he was unable to procure affidavit). In this matter, although appellant did not expressly argue counsel refused to submit a proper affidavit, it is clear appellant requested one, but counsel submitted only a statement averring he would testify at a hearing if ordered.

---

[7] As briefly explained at n.2, *supra*, counsel submitted a notarized and sworn statement on December 13, 2013, entitled "Affidavit of Norman Scott, Esq." It is one-half page in length and contains three enumerated averments: 1) counsel's name and his profession, 2) a statement he had represented appellant in a capital case in Philadelphia, and 3) a statement "I will testify and respond to all questions at a hearing ordered by a court, in lieu of an affidavit." This "affidavit," which lacks any discussion of what counsel's testimony would be at a PCRA hearing on appellant's issues, is not the type of statement envisioned by our case law and statutory authority. *See Roney,* 79 A.3d at 606-07 (ineffectiveness claim dismissed where counsel filed "no affidavit or other evidence" explaining actions he did or did not take relative to appellant's claim); *see also* 42 Pa.C.S. §9545(d)(1) (petition shall include signed certification as to each intended witness stating substance of witness's proposed testimony); Pa.R.Crim.P. 902(A)(12)(b).

Accordingly, we do not determine appellant's inability to procure a proper affidavit was unexplained under the circumstances of this case, or represented an inadequate attempt to raise conclusory allegations without proper evidentiary support.

Moreover, although the PCRA court dismissed appellant's ineffectiveness claim on lack of prejudice, it did so while highlighting opposing factual possibilities. In our view, whether Officer Little's report contained a typographical error or represented a legitimate discrepancy may be relevant to the inquiry. Indeed, the court's resolution of the issue on its determination both guns were linked to appellant failed to address the potentially contrary facts that appellant did not flee through the alley where R-1 was recovered, and Schoenberger testified R-1 was his gun stolen at the time of the home invasion. In sum, we conclude appellant has raised genuine issues of material fact, which if resolved in his favor would entitle him to relief, and that a legitimate purpose would be served by further proceedings. The PCRA court's determination to the contrary was error, and we remand to that court for further proceedings. The PCRA court's task on remand is to determine whether appellant's ineffectiveness claims respecting the conflicting ballistics evidence have arguable merit, and if so, whether a reasonable basis existed for counsel's failure to use the reports to oppose consolidation or impeach the Commonwealth's witnesses at trial, and whether appellant was prejudiced by counsel's chosen course.

**B. *Brady*.** Appellant claims the trial record supports an inference the Commonwealth did not provide counsel with a copy of Officer Finor's report until Officer Finor was presented as a witness at trial. The Commonwealth responds appellant proffered no actual evidence of a pre-trial *Brady* violation to the PCRA court, and the trial record is inconclusive on the matter, as counsel merely remarked at trial he did not

"seem" to have Officer Finor's report. Commonwealth's Brief at 27. On this basis alone, the Commonwealth posits the claim must fail. *See Commonwealth v. Porter*, 728 A.2d 890, 898 (Pa. 1999) (defendant raising *Brady* claim must prove, by reference to record, evidence was withheld or suppressed by prosecution).

Although the PCRA court acknowledged appellant argued "late disclosure prevented counsel from preparing an adequate cross-examination of Officer Finor," the court rejected the *Brady* claim on the grounds appellant failed to establish suppression actually occurred. The court noted "[t]rial counsel was provided with Officer Finor's FIU report before he got on the stand to testify." PCRA Court slip op. at 36. The court concluded, "this evidence was not suppressed by the Commonwealth." *Id., citing Commonwealth v. Lambert*, 884 A.2d 848, 854 (Pa. 2005) (to establish successful *Brady* claim, defendant must show evidence was suppressed by prosecution). Neither the Commonwealth nor the PCRA court squarely address whether the alleged non-disclosure of Officer Finor's report until the time of trial prejudiced appellant's ability to oppose the motion to consolidate the separate cases before trial.

To succeed on a *Brady* claim, the defendant must show: (1) evidence was suppressed by the prosecution; (2) the evidence, whether exculpatory or impeaching, was favorable to the defendant; and (3) prejudice resulted. *Commonwealth v. Daniels*, 104 A.3d 267, 284 (Pa. 2014), *citing Commonwealth v. Tedford*, 960 A.2d 1, 30 (Pa. 2008). A *Brady* violation exists only where the suppressed evidence is material to guilt or punishment, *i.e.*, where there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *Id.* In determining whether a reasonable probability of a different outcome has been demonstrated, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial,

understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). A "reasonable probability" of a different result is shown when the government's suppression of evidence "undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

Brady claims, nevertheless, may be subject to waiver. *See Roney*, 79 A.3d at 609-12 (several *Brady* claims deemed waived on PCRA appeal for failure to raise them at trial or on direct appeal), *citing Commonwealth v. Chmiel*, 30 A.3d 1111, 1129-30 (Pa. 2011); *Commonwealth v. Treiber*, 121 A.3d 435, 460-61 (Pa. 2015) (*Brady* claim waived because it could have been raised in an earlier proceeding), *citing Chmiel*, 30 A.3d at 1129-1130. *See also Commonwealth v. Bomar,* 104 A.3d 1179, 1190-91 (Pa. 2014) (*Brady* claim waived where appellant did not show evidence was not available at trial or counsel could not have uncovered it with reasonable diligence).

Here, appellant fails to indicate when or how he became aware of the alleged *Brady* material, *i.e.*, the conflicting ballistics reports. However, since Officer Finor's report was disclosed at trial, the evidence was available at the time of post-sentence motions or direct appeal. Appellant did not raise an alleged *Brady* violation in his post-sentence motions or on his direct appeal. Appellant also fails to offer any explanation as to why this information could not have been obtained earlier with the exercise of due diligence. These omissions are potentially fatal to the claim, particularly since Officer Little's report, which counsel had in his possession pre-trial, referenced Officer Finor's report. Accordingly, because appellant's *Brady* claim was cognizable but not raised on post-verdict motions or direct appeal, and appellant has not shown the allegedly undisclosed evidence could not have been discovered with reasonable diligence, we

conclude the claim is waived and the court did not err in dismissing the claim without a hearing.[8]

## V. Uncharged robbery

Appellant claims evidence of the robbery of Natisha Evans should have been excluded at trial, and claims counsel "was ineffective for failing to adequately challenge the admission of this unfairly prejudicial evidence, or to seek corrective measures once the evidence was admitted." Appellant's Brief at 45. Specifically, appellant asserts Evans's identification of appellant (and Shiem Gary, appellant's conspirator in the Schoenberger home invasion) as the men who robbed her of Townes's drugs the night before Townes was murdered, was unreliable. Appellant further asserts Dr. Penrod, an expert in human memory, reviewed the case at the PCRA pleadings stage and concluded there were numerous factors pertaining to the witness's ability to perceive and remember the events in question which support appellant's claim the identification was unreliable. Appellant asserts "even if Dr. Penrod (or a similarly qualified expert) could not have provided testimony on the reliability of Evans'[s] identification[,]" counsel should have presented "such testimony" to the court "in a motion *in limine*[,]" and his failure to do so was ineffective assistance of counsel. *Id.* at 49.

---

[8] Appellant's discussion of the *Brady* issue, at times, infuses language more suitable to presentation of an ineffectiveness claim. For example, in discussing *Brady* materiality, appellant argues, "[t]here is a reasonable probability that, had the complete FIU reports been disclosed to **competent** counsel [pre-trial] … the Commonwealth's [petition for consolidation] would not have been granted." Appellant's Brief at 40 (emphasis added). We emphasize appellant's *Brady* claim is substantive, and raised only as an alternative to the claim of counsel's ineffectiveness for failing to properly use the contradictory ballistics evidence. There is no claim, layered or otherwise, specifically alleging ineffectiveness of counsel for failing to raise a *Brady* claim.

Appellant further posits the robbery evidence was irrelevant to the Santos homicide and Schoenberger home invasion, and counsel was ineffective because he "raised none of these arguments" as a basis for exclusion of the evidence. *Id.* at 47. Additionally, appellant argues even if the evidence of the robbery was credible and relevant, it should have been excluded because its potential for unfair prejudice outweighed its probative value. *Id.* at 49. Appellant claims after the evidence was admitted, counsel was ineffective for failing to seek an instruction limiting the jury's consideration of the evidence. Appellant argues these claims have arguable merit, counsel had no reasonable basis for failing to "adequately state the grounds" of his objection, and appellant was prejudiced because "admitting other crimes evidence rendered appellant's trial fundamentally unfair and denied him his due process rights." *Id.* at 51, 52.

The Commonwealth responds a motion *in limine* to exclude the evidence would have been futile, as defense counsel objected to the admissibility of the evidence at trial and the objection was properly overruled. The Commonwealth posits the evidence was admissible because it was probative of the motive for Townes's murder and to explain the history and natural development of the crime. Moreover, the robbery was probative of the relationship between appellant and his conspirators in the home invasion. The Commonwealth asserts counsel's performance is presumptively reasonable, and argues appellant did not carry his burden to show counsel's actions were unreasonable, asserting the decision not to further highlight Evans's testimony could be considered a sound trial strategy.

The PCRA court determined "[b]ecause trial counsel did object to this evidence, and evidence of this crime was properly admitted at trial under the *res gestae* exception to Pa.R.E. 404(b) to show the sequence of events or story of the case, th[e

ineffectiveness] claim lacks merit, and was properly dismissed by this [c]ourt." PCRA Court slip op. at 12.

At the time of appellant's trial, expert testimony in the area of eyewitness identification was *per se* inadmissible. *See Commonwealth v. Walker*, 92 A.3d 766, 769 (Pa. 2014) (reconsidering then-current decisional law absolutely banning such expert testimony, and holding admission of such expert testimony no longer *per se* impermissible in Pennsylvania). It is well-settled that counsel cannot be deemed ineffective for failing to predict changes in the law. *Commonwealth v. Fletcher*, 986 A.2d 759, 801 (Pa. 2009), *citing Commonwealth v. Gribble*, 863 A.2d 455, 464 (Pa. 2004). Importantly, *Strickland* ineffectiveness cannot be premised on a hindsight evaluation. *Commonwealth v. Bennett*, 57 A.3d 1185, 1201 (Pa. 2012), *citing Colavita*, 993 A.2d at 894 n.13. Here, appellant claims counsel was ineffective for failing to file a motion *in limine* asking the court to consider expert testimony which could not be presented to the jury. We conclude appellant is not entitled to relief on this claim raised on collateral attack approximately fifteen years after trial, and following a change in the law as any examination of the reasonableness of counsel's chosen course would necessarily entail a hindsight analysis.

Additionally, the rules of evidence provide:

(b) Crimes, Wrongs or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1), (2).

In *Commonwealth v. Lark*, 543 A.2d 491, 497 (Pa. 1988), this Court held evidence of other crimes, while generally not admissible solely to show criminal propensity, may be admissible in special circumstances where it is relevant for some other legitimate purpose; one special circumstance is the *res gestae* exception, where the evidence became part of the history of the case and formed part of the natural development of the facts. Evans testified she described appellant to Townes, who "appeared to know who this was." *Cousar*, 928 A.2d at 1030. Townes confronted appellant the next night, and was shot to death. Thus, we agree the evidence was admissible to show motive and complete the story of the case under the *res gestae* exception. *Lark*, 543 A.2d at 497.

Moreover, the record shows trial counsel objected to the admissibility of the uncharged robbery evidence on the basis "it's not relevant to any of the charges against [appellant]." N.T. 5/3/01 at 30. Thus, the record belies appellant's current claim counsel was ineffective for failing to argue the robbery evidence was irrelevant to the Santos homicide and Schoenberger home invasion. Finally, where evidence of a defendant's prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose. *Commonwealth v. Hutchinson*, 811 A.2d 556, 561 (Pa. 2002). However the decision not to seek such an instruction may be deemed reasonable in some circumstances because counsel may wish to downplay the evidence rather than highlight it to the jury. *Commonwealth v. Solano*, 129 A.3d 1156, 1178 (Pa. 2015) (Opinion Announcing Judgment of the Court). In any event, appellant employs a hindsight analysis and conclusory arguments to support his claim no reasonable basis could have existed for failing to ask for a limiting instruction. We decline to consider appellant's argument as he has failed to proffer proper

evidentiary support for it. Ineffectiveness cannot be based on a hindsight analysis as established in *Strickland.* 466 U.S. at 689. We conclude appellant is not entitled to relief for counsel's failure to seek a limiting instruction.

**VI. Identification evidence**

As previously noted, four eyewitnesses (Khalid Abdu, Luz Diaz, Janice Khabir and Emma Carrasquillo) identified appellant at trial as the person who shot Santos. Abdu, Diaz and Carrasquillo also identified appellant prior to trial in a photo array and at his preliminary hearing. Khabir was not shown a photo array. Instead, she viewed a live line-up and selected someone other than appellant. At appellant's preliminary hearing the next day, she identified appellant as the shooter while admitting she had not identified appellant at the line-up, but stating she had no doubt appellant was the shooter. At trial, Khabir explained her inability to identify appellant at the line-up was due to her extreme claustrophobia; the line-up was held in a locked room deep inside a correctional facility.

Moreover, as we stated previously, Debra Redden was the sole eyewitness to the Townes shooting. She identified appellant as the shooter from a photographic array, but failed to identify appellant at his subsequent preliminary hearing. At the preliminary hearing, she admitted she identified appellant in a photographic array, but denied she was positive it depicted the person who shot Townes. Specifically, at the preliminary hearing, she testified, "Yes, it [the photo] looked like him, but that man right there [indicating appellant] does not look like him." N.T. 10/19/99 at 36-37. At trial, however, Redden identified appellant, recounting she not only saw appellant commit the shooting, but shortly thereafter, as she sat on a porch, heard appellant say as he walked past her, "That's what the f__ he get." *Cousar*, 928 A.2d at 1030. She also

testified that in the summer of 1999, when the photo array and preliminary hearing were conducted, she was ingesting illegal drugs every day, but by the time of trial, she had been sober for more than a year. On direct appeal, in challenging the sufficiency and weight of the evidence, appellant argued Redden's identification of appellant from the photo array was equivocal. This Court noted Redden's testimony regarding her identification from the array "was not necessarily as equivocal as appellant would portray it," citing Redden's trial testimony regarding the photo array and her positive identification of appellant as the person she saw shoot Townes. *Id.* at 1033.

Appellant claims counsel was ineffective for failing to adequately challenge all the eyewitness identifications of appellant "before or during trial." Appellant's Brief at 53. He claims the police photo array identification procedures tainted the identifications, and the identifications were unreliable. Appellant claims the photo array of eight "mugshots selected and arranged by detectives" shown to Abdu, Diaz, Carrasquillo and Redden was overly suggestive because it was presented weeks after the shootings and included photos of appellant and a conspirator in the home invasion, both of which were conspicuous, because both were the only depictions of men with bare shoulders. Appellant's Brief at 68-69.[9] Appellant also alleges Redden was shown, in addition to the photo array, "a stand-alone photo of appellant, which she signed and dated," but which "does not indicate the order in which she viewed the photos." *Id.* at 70.[10]

---

[9] In the photo array, appellant was photo number six; his conspirator was number five. Appellant's Brief at 69, *citing* Appendix at 1466.

[10] Appellant acknowledges the record "indicates Redden selected photo number six, [a]ppellant's mugshot, from a multi-photo array" which "may have been the same array shown to Abdu, Diaz and Carrasquillo," but alleges the photo Redden signed "is an individual photo" of appellant. Appellant's Brief at 60. The PCRA court noted, "it is unclear to this [c]ourt what individual photograph [appellant] is talking about." PCRA Court slip op. at 15 n.29.

Appellant claims counsel was ineffective for failing to conduct more thorough cross-examination of all the eyewitnesses. With respect to Redden, appellant alleges counsel was ineffective for failing to impeach her with her inability to identify appellant at his preliminary hearing. Appellant additionally avers Dr. Penrod reviewed the record at the PCRA pleading stage and concluded, to a reasonable degree of scientific and psychological certainty, that specific factors existed which raised valid concerns regarding the reliability of the identifications by all the witnesses. On that basis, appellant avers counsel was ineffective for failing to consult an expert to assist him in preparing his cross-examinations of the eyewitnesses. He argues the unreliable identifications and suggestive police practices, taken together, produced a substantial likelihood of irreparable misidentification. Thus, appellant claims counsel was ineffective for failing to file a motion to suppress the identifications.

The Commonwealth asserts the PCRA court properly rejected these claims because the identification procedures were not unduly suggestive and, in any event, the witnesses had independent grounds for their identifications. The Commonwealth posits trial counsel's decision not to hire an expert to substantiate unreliability was "manifestly reasonable, since case law made clear that expert testimony on eyewitness identifications was categorically inadmissible" at the time of appellant's trial. Commonwealth's Brief at 49. The Commonwealth also asserts cross-examination of Redden with her preliminary hearing testimony "would have been merely cumulative," given the trial evidence of her drug use, and her somewhat equivocal identification of appellant from the photo array, when she told police appellant "looks like the guy who done it." *Cousar*, 928 A.2d at 1033. Finally, the Commonwealth posits appellant has failed to show *Strickland* prejudice for any of his claims of ineffectiveness related to the eyewitness testimony.

The PCRA court concluded a motion to suppress the eyewitnesses' identifications would not have been successful because the photo array shown the witnesses was not unduly suggestive and their identifications of appellant were not unreliable; thus the court ruled appellant's claim his trial counsel was ineffective for failing to seek suppression lacked arguable merit.  PCRA Court slip op. at 16-17.  With regard to counsel's failure to cross-examine Redden with her failure to identify appellant at his preliminary hearing, the PCRA court held "while the better course would have been for trial counsel to question her earlier testimony, not all errors … entitle petitioner to a new trial — petitioner is entitled to a fair trial, not a perfect one."  PCRA Court slip op. at 24.  The PCRA court determined appellant received a fair trial because the trial court gave the jury a general *Kloiber* charge, and the PCRA court dismissed the claim of counsel's ineffectiveness on that basis.   PCRA Court slip op. at 24, *citing Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954); *see Commonwealth v. Johnson*¸139 A.3d 1257, 1281 (Pa. 2016) (defendant entitled to a *Kloiber* charge instructing jury identification testimony must be received with caution where witness was not in position to clearly observe defendant, or is not positive as to identity; equivocated on identification; or failed to identify defendant on prior occasions).

The court additionally held expert testimony regarding unreliability of eyewitness testimony was inadmissible at the time of appellant's trial and thus, counsel could not be deemed ineffective for failing to consult an expert in this area.

**A. Motion to suppress**

Whether a pretrial identification should be suppressed as unreliable is determined from the totality of the circumstances.  *Commonwealth v. Pierce*, 786 A.2d 203, 209 (Pa. 2001), *citing Commonwealth v. Sutton*, 436 A.2d 167, 169 (Pa. 1981).  A pretrial identification will not be suppressed unless the facts demonstrate that the

identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification. *Pierce*, 786 A.2d at 209, *citing Simmons v. United States*, 390 U.S. 377, 384 (1968).

The PCRA court correctly noted appellant pointed to no case law directly supporting his contention the bare-shouldered photos of himself (and a conspirator) rendered the array shown to the witnesses impermissibly suggestive. The PCRA court also correctly noted the array photos showed eight men whose facial characteristics were similar to that of appellant. PCRA Court slip op. at 15. Under the totality of the circumstances, we decline to find the photo array was suggestive and we determine the PCRA court correctly dismissed the claim of ineffectiveness based thereon as lacking merit. *See Commonwealth v. Carson*, 741 A.2d 686, 697 (Pa. 1999) (nine-person array including photos of three suspects does not imply suggestiveness); *see also Commonwealth v. Fisher*, 769 A.2d 1116, 1126 (Pa. 2001) ("Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than those of the others, and the people depicted all exhibit similar facial characteristics."). Moreover, with respect to Redden's pre-trial identification which was allegedly based in part on a stand-alone photo of appellant in addition to the array, we conclude the ineffectiveness claim has no arguable merit as appellant simply does not identify the procedure by which Redden was shown the photos with any particularity, specificity or clarity.

### B. Cross-examination

The record shows counsel cross-examined every eyewitness in this matter at some length regarding their identifications. On direct appeal, in assessing the sufficiency and weight of the evidence, this Court agreed the eyewitnesses were vigorously challenged on cross-examination. With respect to the Santos shooting, we

reject appellant's claim that counsel rendered ineffective assistance for failing to conduct competent cross-examinations of the four eyewitnesses to the shooting because the claim is belied by the record and thus, lacks arguable merit.

With respect to the Townes shooting, however, the issue regarding the effectiveness of counsel's cross-examination is more challenging, as Redden was the only eyewitness to that killing, and counsel did not impeach her with her inability to identify appellant at the preliminary hearing. Although counsel did cross-examine Redden vigorously on her excessive drug use, poor memory, equivocal photo identification, and the details of her statement to police, he failed to bring to the jury's attention the fact Redden did not positively identify appellant at his preliminary hearing. It is clear Redden's testimony was crucial to the Commonwealth's case, as she was the only witness to the Townes shooting. Thus, we cannot agree with the PCRA court's determination that, while the better course would have been for counsel to question Redden about her inability to identify appellant at his preliminary hearing, counsel's failure to do so did not undermine the fairness of appellant's trial. PCRA Court slip op. at 24. Instead, we determine appellant has raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief. Accordingly, we remand to the PCRA court for fuller evidentiary development of this claim.[11]

---

[11] In a related argument, appellant acknowledges expert testimony regarding the accuracy of eyewitness testimony was not admissible at the time of appellant's trial. He nevertheless claims counsel rendered ineffective assistance for failing to consult an expert in this area in order to aid counsel's preparation for cross-examination of the witnesses. This precise argument was presented to the PCRA court which dismissed the issue on the basis expert testimony regarding the accuracy of eyewitness testimony was inadmissible at the time of appellant's trial, without discussing counsel's decision not to consult an expert in this area to aid counsel's trial preparation. Accordingly, because we remand for a fuller evidentiary hearing regarding counsel's failure to impeach Redden with her prior inconsistent testimony on cross-examination, and recognizing the argument regarding consultation with an expert appears to be part-and-
(continued…)

## VII. Eyewitnesses who failed to identify appellant at line-up

As previously noted, on direct appeal, we held the trial court did not err in precluding evidence showing a number of potential eyewitnesses to the Santos shooting, who did not testify at trial, failed to identify appellant in a line-up. At trial, appellant attempted to admit this non-identification evidence through the testimony of Detective Wynn, who conducted the line-ups.[12] The Commonwealth's objection on hearsay grounds was sustained, and this Court held the trial court correctly determined the proposed testimony was inadmissible hearsay. *Cousar*, 928 A.2d at 1039-40.

Appellant now claims counsel was ineffective for failing to present "the court with compelling arguments to support his proffer of Wynn's testimony." Appellant's Brief at 81. Appellant alleges the line-up "non-identification evidence" would have provided "an important factual context" for evaluating the photo array identification evidence. *Id.* Specifically, Appellant alleges the fact "no witness" identified appellant at the live line-up supported an inference the photo array was improperly suggestive because "every witness shown the photo array identified [a]ppellant." *Id.* (emphasis deleted). Appellant further asserts counsel's statement to the court, "Your Honor, I could not have anticipated your ruling on Detective Wynn's testimony[,]" establishes counsel's lack of preparation, and shows he had "no reasonable basis for failing to support his proffer" by arguing the non-identification evidence at the line-up would show the photo array was highly suggestive. *Id.* at 83-84, *quoting* N.T. 5/7/01 at 51.

---

(…continued)
parcel of the claim, we conclude the PCRA court may consider expert evidence in this area if offered on remand.

[12] Counsel's reason for not calling the individual witnesses themselves was his fear of possible spontaneous in-court identification. N.T. 5/7/01 at 9-10.

The Commonwealth and the PCRA court both note the claim was previously litigated on direct appeal. Appellant acknowledges the underlying evidentiary claim was litigated on direct appeal, but maintains "this independent claim of ineffective assistance of counsel has not been previously litigated." *Id.* at 84. This Court agrees the admissibility of the proposed testimony was litigated on direct appeal as a question of alleged trial court error. However, appellant's derivative Sixth Amendment claim that counsel rendered ineffective assistance by failing to procure a determination of admissibility from the trial court has not been previously litigated. *See Commonwealth v. Hanible*, 30 A.3d 426, 442 (Pa. 2011) (Sixth Amendment claim alleging ineffective assistance of counsel raises issue cognizable under PCRA even if underlying claim of error has been previously litigated), *citing Commonwealth v. Collins*, 888 A.2d 564, 573 (Pa. 2005). Nevertheless, appellant has completely failed to substantiate his claim per the requisite *Strickland/Pierce* factors; in particular appellant has not even addressed the reasonableness of counsel's stated reason for declining to call the witnesses. Thus, we dismiss his ineffectiveness claim on that basis.

## VIII. Charge on burden of proof

Appellant challenges the following instruction, given by the court to the jury during its guilt phase charge:

> The Commonwealth's evidence must convince you of the defendant's guilt beyond a reasonable doubt on each and every element of each and every crime charged. Now if the Commonwealth's evidence fails to meet its burden, then it will be your sworn duty to find this defendant not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt this defendant's guilt, the verdict should be guilty.

N.T. 5/8/01 at 71-72.

Appellant alleges he presented some evidence of his "innocence" to the jury, such as testimony he was home "around the time" of the Santos shooting, as well as testimony on cross-examination which undermined the reliability of certain eyewitnesses. Appellant's Brief at 84-85. Appellant claims the Court's instruction was error because it did not instruct the jury it should consider appellant's evidence in determining whether the Commonwealth met its burden of proof. Appellant alleges counsel was ineffective for failing to object to the charge as given.

The Commonwealth responds appellant does not cite any authority for the proposition it is error for a court to omit instructing a jury that defense evidence may create a reasonable doubt. Thus, the Commonwealth posits the claim is waived because of appellant's failure to develop the issue in any meaningful way under applicable decisional and rule-based precedent. In the alternative, the Commonwealth asserts the charge was proper, and maintains appellant's ineffectiveness claim fails on that basis. The Commonwealth additionally asserts the ineffectiveness claim fails because appellant proffered no evidence counsel's decision was not the product of reasonable strategic considerations, and appellant made no showing of *Strickland* prejudice. The PCRA court did not address the claim.[13]

Appellant offers no legal support for his claim aside from a single citation to *Chambers v. Mississippi*, 410 U.S. 284 (1973), for the general proposition that a defendant has a fundamental right to present witnesses. Accordingly we agree the instant claim has been waived. *See Commonwealth v. Woodard*, 129 A.3d 480, 502 (Pa. 2015), *citing Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) (where

---

[13] The PCRA court addressed a related claim raised below, but not raised in the present appeal — whether counsel was ineffective for failing to object to penalty phase instructions.

appellate brief fails to develop issue in meaningful fashion capable of review, claim is waived); *see also* Pa.R.A.P. 2119(a) (appellate briefs must contain "such discussion and citation of authorities as are deemed pertinent").

Even if appellant did not default on the underlying claim regarding the propriety of the instruction, his claim of ineffectiveness relies on conclusory arguments regarding counsel's failure to object. This Court has noted counsel is not constitutionally required to forward any and all possible objections at trial, and the reasonableness of counsel's trial performance is not measured by an exercise in "spot the objection," as might occur in a law school evidence examination. *Colavita*, 993 A.2d at 896, *quoting Spotz*, 870 A.2d at 832-33. Here, appellant does not even discuss the reasonableness of counsel's strategy. Instead, appellant simply labels counsel's decision not to object as "deficient performance," which in essence is an assertion counsel's alleged ineffectiveness is discernible as a matter of law. Appellant's Brief at 87. *Strickland* prejudice is not proved by such conclusory characterizations, and we dismiss appellant's contrary suggestion here.

## IX. Conflict of interest

Appellant asserts appellate counsel (Mischak) harbored an actual conflict of interest because, prior to representing appellant on appeal, he represented Ronnell Davis at Davis's trial for the Schoenberger home-invasion robbery. The gravamen of appellant's claim is that during his representation of Davis, Mischak's investigator, Brian Grievous, took a statement from Marshall Ray Whistleman in which Whistleman said Schoenberger told him (and his wife) appellant was at the scene of the home-invasion robbery but did not brandish a weapon. Appellant claims Whistleman's statement could have been raised post-trial in appellant's case as after-discovered evidence, but Mischak could not do so due to his ongoing duty to Davis (whom he no longer

represented) because the evidence would have somehow inculpated Davis. Appellant further asserts because this was an actual conflict of interest, he need not show prejudice. In the alternative, appellant argues, "if, however, this Court finds that the standard for an actual conflict of interest has not been met[,]" Mischak was nevertheless ineffective because he "failed to advise [a]ppellant of his right to conflict-free counsel, and to plead and pursue exculpatory evidence." Appellant's Brief at 93-94.

The Commonwealth responds the claim is waived, as appellant did not allege an actual conflict of interest in his amended PCRA petition. The Commonwealth posits the claim is meritless in any event because Davis and appellant did not have competing interests, the triple-hearsay statement could not have formed the basis of a valid after-discovered evidence claim, and, with respect to the alternative claim of ineffectiveness, appellant has not supported his proffer with an affidavit from counsel to substantiate counsel had no reasonable basis for his actions or inactions.

The PCRA court determined the statement contained only inadmissible hearsay, and even if the statement were admissible, it could not have formed the basis of a valid after-discovered evidence claim because it was not exculpatory, and there was no showing it could not have been obtained prior to trial by reasonable diligence. Specifically, the court noted Whistleman's statement indicated Schoenberger said he opened the front door of his home to appellant because he recognized him, and three others brandishing guns, whom Schoenberger had not previously seen or recognized, immediately entered behind appellant. Significantly, Whistleman's statement indicated Schoenberger said he "thought [appellant] was involved in it [the robbery] because [Schoenberger] would not have opened the door if he did not recognize [appellant]." PCRA Court slip op. at 47, *quoting* Whistleman Statement, dated 12/2/01, at 4-5.

We disagree with the Commonwealth's assertion appellant did not allege an actual conflict of interest in the amended PCRA petition. While the petition does not use the phrase "actual" to describe the alleged conflict of interest, the essence of the claim is that "Mischak's division of loyalties affected his performance." Amended PCRA Pet. at 113, ¶445. The United States Supreme Court has noted an actual conflict of interest is one which adversely affects counsel's performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 346-48 (1980) ("We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."). Thus, we will address the claim.

To show an actual conflict of interest, an appellant must demonstrate: 1) counsel actively represented conflicting interests; and 2) the conflicting interests adversely affected counsel's performance. *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1147 (Pa. 2012). The interests of clients conflict when they diverge with respect to a material factual or legal issue or course of action. *Id.*

Appellant concedes this is a case of successive representation. Amended PCRA Pet. at 113, ¶446. Because this case involves successive and not dual representation, appellant must demonstrate he was prejudiced by any potential conflict of interest. *Commonwealth v. Tharp*, 101 A.3d 736, 754 (Pa. 2014), *citing Spotz*, 896 A.2d at 1231-32. Appellant has failed in this regard.

The claimed prejudice here is "Mischak's failure to plead information in his possession [Whistleman's statement] that exculpated [appellant] but inculpated Davis." Appellant's Brief at 94. Whistleman's statement, however, does not reference Davis at all, or the role he may have played in the Schoenberger robbery, but only references appellant in the company of three unidentified individuals and suggests appellant was

part of the conspiracy on that basis. Thus, Whistleman's statement does not exculpate appellant or inculpate Davis. Appellant has not shown he was prejudiced by any alleged potential conflict of interest which might have prevented counsel from disclosing the statement.

Additionally, in order to be granted a new trial based on after-discovered evidence, appellant must show the evidence: 1) has been discovered after trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence; 2) is not merely corroborative or cumulative; 3) will not be used solely to impeach a witness's credibility; and 4) is of such a nature and character that a different verdict will likely result if a new trial is granted. *Commonwealth v. Randolph*, 873 A.2d 1277, 1284 (Pa. 2005), *citing Commonwealth v. McCracken*, 659 A.2d 541, 545 (Pa. 1995). Accordingly, we agree with the PCRA court's determination the statement would not have supported an after-discovered evidence claim because it was not of such a character that a different verdict would likely result in the event of a new trial.

## X. Rebuttal evidence

In his penultimate issue, appellant alleges the ineffectiveness of prior counsel for failing to investigate and uncover a number of available witnesses to rebut the Commonwealth's evidence at trial.[14] First, appellant references declarations made in 2012 by eyewitnesses Abdu and Diaz stating they were uncertain about their identifications of appellant. Second, appellant references statements made by

---

[14] Despite the "prior counsel" phrasing, the issue statement and argument presented focus exclusively on trial counsel's actions. Appellant's Brief at 95-98. Appellant articulates no explicit or cognizable issue of appellate counsel's ineffectiveness, either for failing to uncover the alleged rebuttal witnesses himself, or for failing on appeal to allege trial counsel was ineffective for failing to uncover the alleged rebuttal witnesses.

Whistleman and his wife regarding statements Schoenberger made to them about Schoenberger's lack of certainty about appellant's involvement in the home-invasion, his belief he may have accused the wrong man, his assertion the gun stolen from him during the home-invasion had been "hot" when he bought it, and his further assertion he did not recant his trial version of events because he was afraid the actual robbers would kill him. Third, appellant references a 2012 statement by Ryheim Hill stating although he told police in 1999 he was not present when Townes was shot, he was in fact present and saw another man he identified as Habeeb Bridges shoot Townes. Fourth, appellant references a statement made by Lamar Douglas in 2013, indicating Bridges confessed to him he shot Townes. The entire sum and substance of appellant's conclusory argument regarding ineffectiveness states counsel could have found these witnesses through reasonable investigation and appellant was prejudiced by counsel's failure to present the evidence in rebuttal.

The Commonwealth responds the claim is waived because appellant did not include any relevant citation to authority. Moreover, the Commonwealth asserts appellant's ineffectiveness claim fails on the merits. The PCRA court opined "none of the post-conviction declarations given by trial witnesses contain information that would have changed the outcome at trial." PCRA Court slip op. at 37. The court noted Abdu confidently testified at trial that appellant was the person who shot Santos, and reasons the ineffectiveness claim with respect to Abdu's later declaration must fail because "[appellant] fails to set forth how trial counsel could have known that, over a decade after this shooting, Mr. Abdu would profess uncertainty regarding his identification." *Id* at 38. Moreover, with respect to Diaz, the court correctly noted her 2012 declaration was consistent with her trial testimony. Regarding the additional declarations by persons who were not witnesses at trial, the court opined appellant's ineffectiveness

claim fails because he did not establish counsel should have known these witnesses existed and were willing to testify and that the absence of their testimony denied appellant a fair trial. PCRA Court slip op. at 40-43.

Appellant's argument in support of his issue spans four pages of his brief. Appellant's Brief at 95-98. Appellant does not cite to any authority, relevant or otherwise, to support his contentions. Although we could properly determine appellant's argument is waived on this basis, as the Commonwealth contends, we conclude a merits determination is the better course. To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, an appellant must show: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant. *Commonwealth v. Fletcher*, 750 A.2d 261, 275 (Pa. 2000), *citing Commonwealth v. Pursell*, 724 A.2d 293 (Pa. 1999).

At trial, Abdu testified he had a "very, very good chance" to see appellant's face when appellant shot Santos, and when viewing the photo array "I immediately knew it was him. I couldn't forget his face." N.T. 5/3/01 at 11, 17. Appellant has failed to discuss, much less show, that at the time of trial, counsel could have known that a decade later, Abdu would express some doubt about the certainty of his identification, such that counsel rendered ineffective assistance for failing to probe, presumably, whether Abdu's certainty was such that it would never waver in the future. The unsupported claim is devoid of merit, and the PCRA court properly dismissed it.

At trial, Diaz testified that, at the time of the Santos shooting, she only saw the side of appellant's face for a moment, but maintained her identification of him despite admitting on cross-examination she told a police officer at the scene she was not sure

she could identify the perpetrator again. Thus, her trial testimony and her declaration a decade later in which she stated she "got a quick glimpse of his face," and "did the best I could to pick out the right photograph" during the photo array, were not inconsistent. PCRA Court slip op. at 39, *citing* Diaz Declaration. Appellant has not shown the failure to elicit the substance of the witness's subsequent statement resulted in prejudice as it was consistent with her trial testimony and thus, would not have affected the verdict. *See Pierce*, 527 A.2d at 975 (prejudice in ineffectiveness context measured by whether there is a reasonable probability result of proceeding would have been different). Thus, the PCRA court properly dismissed this claim as well.

Regarding the statements of Whistleman (and his wife), appellant has made no reference, much less a showing, that counsel was informed of the existence of these witnesses or should have known of their existence or that they were prepared to cooperate and testify on appellant's behalf. The claim of ineffectiveness lacks arguable merit and was properly dismissed by the PCRA court. *Fletcher*, 750 A.2d at 275.

With respect to Hill, appellant alleges counsel should have known of Hill's existence because he was interviewed by police. However, Hill told police he did not see the Townes shooting. In his 2012 statement he claims he was afraid to talk to police and was also afraid of Bridges, whom he alleged was the actual killer. Although Hill avers in his statement he would have been "willing to help" if contacted by counsel, the fact he did not cooperate with police at the time he was questioned makes the asserted and belated claim of willingness to help illusory. Appellant has failed to satisfy the arguable merit and reasonable basis prongs of the ineffectiveness analysis. Moreover, appellant has not shown a reasonable probability the result of his trial would have been different if Hill had testified, particularly since Hill's credibility would likely have been called into question, given his proposed testimony would have conflicted with

his statement to police that he knew nothing about the shooting. Thus, the PCRA court correctly dismissed the claim.

With respect to Douglas's 2013 hearsay statement Bridges confessed to him he shot Townes, appellant has failed to show the statement would have been admissible. Moreover, the fact Douglas, who was reportedly a longtime friend of appellant, waited until 2013 to come forward with this supposedly exonerating hearsay evidence, weakens the substance of the statement such that even if counsel should have known of the existence of Douglas, appellant has failed to show any decision by counsel not to present this hearsay testimony in rebuttal would have been unreasonable. Thus, the claim of ineffectiveness fails, and the PCRA court properly dismissed it. *Fletcher*, 750 A.2d at 275.


### XI. Cumulative prejudice

Appellant argues "even if this Court finds that [a]ppellant is not entitled to relief based on any single claim, he is entitled to relief because of the cumulative effect of these constitutional errors." Appellant's Brief at 98. While this Court has emphasized that "no number of failed claims may collectively warrant relief i[f] they fail to do so individually," *Sepulveda*, 55 A.3d at 1150, *citing Commonwealth v. Rainey*, 928 A.2d 215, 245 (Pa. 2007), we have also recognized that "if multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation." *Id.*, *quoting Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). To the extent we have adverted to prejudice principles in disposing of appellant's cognizable claims of ineffectiveness, we are satisfied that, even if we consider the cumulative effect of his claims, appellant is entitled to no relief.

## XII. Conclusion

Accordingly, we vacate that portion of the order of the PCRA court denying a hearing on appellant's claims that counsel was allegedly ineffective for failing to: 1) use the discrepant ballistics reports to oppose consolidation or impeach the Commonwealth's witnesses; and 2) impeach Redden's in-court identification of appellant with her inability to identify appellant at his preliminary hearing. We affirm the PCRA court's order in all other respects. The case is remanded to the PCRA court for an evidentiary hearing consistent with this opinion.

Jurisdiction relinquished.

Justices Baer, Todd, Wecht and Mundy join the opinion.

Chief Justice Saylor files a concurring and dissenting opinion in which Justice Donohue joins.