J-S03041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISAAC BILAL PEARSON, | : | |
| | : | |
| Appellant | : | No. 2116 EDA 2018 |

Appeal from the PCRA Order Entered July 16, 2018
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0004988-2015

BEFORE: BENDER, P.J.E., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED MARCH 28, 2019**

Isaac Bilal Pearson ("Pearson"), *pro se*, appeals from the Order denying his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

In February 2015, Allentown Police Detective Jason Krasley ("Detective Krasley"), while investigating prostitution, responded to an internet advertisement on backpage.com. Through text messages, Detective Krasley arranged to meet Elizabeth Lopez ("Lopez") at a specified room in the Royal Motel in Allentown. Upon his arrival, Detective Krasley observed Pearson exit the specified room and leave the premises in a dark-colored vehicle. Another officer followed Pearson's vehicle as it departed the motel. After Detective Krasley gained entrance to the room, Lopez offered him sex in exchange for

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

money. Detective Krasley then asked to use the bathroom, at which time he observed another woman, Kelly Favazza ("Favazza"), exit the bathroom. Detective Krasley subsequently arrested Lopez for prostitution, and arrested Favazza for possession of drug paraphernalia.

At trial, Favazza testified that she had met Pearson while staying in a recovery house for her heroin addiction. Pearson, an employee of the recovery house, arranged for Favazza to leave the facility and stay at a motel. Pearson provided heroin to Favazza and posted Favazza's photograph on backpage.com. Pearson used a cellular telephone to receive responses from the website posting. Favazza was to pay Pearson for narcotics and the motel room through prostitution. Favazza paid Pearson approximately $250.00 to $400.00 a day. Pearson controlled Favazza by limiting her access to narcotics.

Detective Krasley learned, through discussions with Pearson's girlfriend, Shelly Dewitt ("Dewitt"), the three cell phone numbers used by Pearson to facilitate prostitution.

On March 12, 2015, Detective Krasley again responded to an advertisement listed on backpage.com. Detective Krasley was directed to Room 216 of the Roadway Inn, on Downeyflake Lane in Allentown. Upon Detective Krasley's arrival at the room, Angelie Schular ("Schular") opened the door and offered him sex for money. After agreeing to the price, Schular disrobed. At that time, Detective Krasley placed Schular under arrest. Schular explained that a black male named Jay a/k/a Cap a/k/a Buddy had posted her

photograph on the backpage.com website. She further explained that the same man had transported her to motel rooms and collected all of her income. According to Schular, the man collected $900.00 from her that morning, and would be arriving shortly to collect additional funds. At Detective Krasley's request, Schular telephoned the man. Schular advised Detective Krasley that the man would be driving a silver Chevrolet.

Shortly thereafter, Pearson arrived at the scene in a silver Chevrolet. Detective Krasley dialed the number that Schular had called earlier, and one of Pearson's cell phones rang, displaying Detective Krasley's telephone number. Detective Krasley also dialed a number listed on backpage.com, at which time a second cell phone in Pearson's possession rang.[2]

Following a trial, during which Pearson proceeded *pro se*,[3] a jury convicted Pearson of two counts of trafficking in individuals, and one count each of promoting prostitution and criminal use of a communication facility.[4] The trial court thereafter sentenced Pearson to an aggregate prison term of

---

[2] A forensic analysis of Pearson's three cell phones disclosed photographs of women who were posted on backpage.com, "as well as a video of [Pearson] coaching [] Dewitt to try to get the girls to return to work for him." Trial Court Opinion, 4/4/16, at 7. In addition, in a recorded telephone conversation from the Lehigh County Jail, Pearson discussed being a pimp and controlling his girls. *See id.*

[3] Pearson represented himself pre-trial and throughout the proceedings. Standby counsel was appointed, who assisted Pearson.

[4] *See* 18 Pa.C.S.A. §§ 3011(a), 4902(b)(3), 7512(a).

- 3 -

17 to 34 years. This Court affirmed Pearson's judgment of sentence, after which the Pennsylvania Supreme Court denied allowance of appeal. ***See Commonwealth v. Pearson***, 169 A.3d 1177 (Pa. Super. 2017) (unpublished memorandum), ***appeal denied***, 170 A.3d 996 (Pa. 2017).

On January 8, 2018, Pearson timely filed the instant PCRA Petition, his first. The PCRA court described what next transpired as follows:

> Matthew Rapa, Esquire [("Attorney Rapa")], was appointed to represent [Pearson] on his [Petition] for Post Conviction Collateral Relief. On April 5, 2018, Attorney Rapa authored a "no-merit letter" pursuant to ***Commonwealth v. Finley***, 550 A.2d 213 (1988), advising [Pearson] of his professional opinion that [Pearson] is not eligible for relief under the [PCRA]…. After a hearing on April 30, 2018, [the PCRA court] allowed Attorney Rapa to withdraw as attorney of record. At this time, [Pearson] indicated his desire to proceed *pro se* at the evidentiary hearing, as well as his willingness and readiness to proceed at that time. Consequently, a hearing relative to [Pearson's PCRA Petition] was conducted before [the PCRA court] on April 30, 2018 ….

PCRA Court Opinion, 7/16/18, at 2-3. On July 16, 2018, the PCRA court denied Pearson post-conviction relief. Thereafter, Pearson, *pro se*, filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Pearson presents the following claims for our review:

1. Did the trial court err in failing to suppress information extracted on 10-7-15 from [Pearson's] cell phone[, which] was seized on 3-12-15[,] incident to arrest, where no "exigent circumstances" existed[?] A search warrant for the contents of [Pearson's] phone was sworn out on 9-30-15 at 10:29 a.m.[,] and expired on 10-2-15 [at] 10:29 a.m. It was not executed[,] and the information not extracted until 10-7-15[,] five days after the search warrant had expired.

2. Was Pearson denied due process by not being allowed to [c]onfront [a]ccuser [Schular] … [,] whose statements [were] the only implicating evidence to effectuate Pearson's warrantless arrest[?]  Pearson did timely object at the preliminary hearing [on] 5-19-15, at [the] pretrial hearing [on] 12-17-15[,] and [at] trial …. [, but] Schul[a]r was never called as a Commonwealth witness[,] leaving the impression [that] impropriety,] and fair adjudication was denied.

3. … Since the Commonwealth [led] the jury to believe Pearson's funds were from prostitution[,] but did not meet its burden at the forfeiture hearing[,] where the standard of proof was lower, was the jury verdict wrong?  Was the state short of the statu[tory] requirements for the charges [of] promoting prostitution and human trafficking for financial benefit?  Did [the PCRA court's] admissibility ruling severely miss the mark on [Pearson's] [e]xculpatory [evidence] [c]laim[,] since the said currency was the crux of the Commonwealth's conviction[,] and Pearson proved entitlement?  Pearson's $905.00 in U.S. currency was ordered to be returned by [the forfeiture court].  Can [Pearson] be guilty of operating a business of prostitution[,] where his currency had no nexus with unlawful activity[,] as ruled by the forfeiture court?

4. Was [standby trial counsel] ineffective[,] during [the] cross[-] examination of [] Favazza[,] by failing to move for impeachment for possibly granted leniency on behalf of the Commonwealth by dismissing [Favazza's] pending charges … ? [Was counsel ineffective for] failing to raise case[-]specific arguments of legal insufficiency on [Pearson's Pa.R.A.P.] 1925(b) [Concise Statement,] or that police lacked probable cause to effectuate a warrantless arrest for the charge of promoting prostitution on 3-12-15, [where] the state presented no indication of [] Schul[a]r's reliability[,] or that the information possessed by police had a degree of dependency in the totality of the circumstances?

Brief for Appellant at 3-4 (unnumbered, citations and emphasis omitted).

Pearson first claims that the trial court improperly failed to suppress the information extracted from his cell phone on October 7, 2015.  *Id.* at 7 (unnumbered).  Pearson contends that the search warrant on the cell phone,

which was seized incident to his arrest, was not executed until five days after the warrant had expired. *Id.* Pearson recognizes that on direct appeal, this Court deemed the issue waived, based upon his failure to raise the issue before the trial court. *Id.* Pearson contends that, before the PCRA court, he showed where, in the record, he preserved the issue. *Id.*

As our Supreme Court has recognized, "[t]o be entitled to PCRA relief, [an] appellant must establish, by a preponderance of the evidence, [that] his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S.[A.] § 9543(a)(2)." *Commonwealth v. Cousar*, 154 A.3d 287, 296 (Pa. 2017).

> Additionally, [an] appellant must show [that] his claims have not been previously litigated or waived, and [that] "the failure to litigate the issue prior to or during trial ... or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S.A. § 9543(a)(3), (a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.[A.] § 9544(a)(2). An issue is waived if appellant "could have raised it but failed to do so before trial, at trial, ... on appeal or in a prior state post[-]conviction proceeding." 42 Pa.C.S.A. § 9544(b).

*Id.*

Our review of the record discloses that Pearson raised this claim on direct appeal. *See Pearson*, 169 A.3d 1177 (unpublished memorandum at 2 (setting forth the issues raised by Pearson on direct appeal), 4 (addressing Pearson's claim and deeming it waived)). Thus, Pearson's present claim was not cognizable under the PCRA, as he previously had litigated the claim on

- 6 -

direct appeal. **See** 42 Pa.C.S.[A.] § 9544(a)(2), (b). Consequently, we cannot grant Pearson relief on this claim. **See Cousar**, 154 A.3d at 296.

In his second issue, Pearson claims that he was denied due process because he was not able to confront Schular, his "accuser." Brief for Appellant at 8 (unnumbered). According to Pearson, "to omit [] [Schular,] but allow Detective [] Krasley to testify as a third party only inflamed the jury and was prejudicial to Pearson's trial." **Id.** at 9 (unnumbered). Pearson cites to Detective Krasley's testimony that Schular had implicated Pearson, and that Pearson had received $905.00 from Schular's "prostituting herself." **Id.** Pearson appears to argue that this testimony is hearsay, and points out that the funds in question subsequently were returned to Pearson. **Id.** Without the admission of Schular's statements, Pearson asserts, he would not have been convicted. **Id.**

> In its Opinion, the PCRA court addressed this claim as follows:
>
> [Pearson] argues that he was denied his right to confront his accuser, [] Schular. This argument is baseless, as [] Schular was never called as a witness by the Commonwealth to testify against [Pearson]. The only reference to [] Schular at trial occurred when [Pearson] himself questioned Detective [] Krasley about who [] Schular claimed her pimp to be. Moreover, no objection was made at the time of trial, and therefore[,] any issue surround[ing] [the] same has been waived.

PCRA Court Opinion, 4/16/18, at 5. Our review confirms the PCRA court's determination that the claim lacks merit, and we affirm on the basis of the PCRA court's above-stated rationale. **See id.**

In his third issue, Pearson argues that the return of the $905.00 seized by the police exonerated him. Brief for Appellant at 10 (unnumbered). According to Pearson, the Commonwealth Court reversed the forfeiture of these funds because there was no direct evidence connecting the funds to unlawful activity. *Id.* Pearson contends that the source of the funds is the "crux" of the Commonwealth's case against him, and because he was entitled to the return of those funds, the jury's verdict was "wrong." *Id.* at 11 (unnumbered). Without those funds, Pearson argues, the "financial gain" required to establish the crime of human trafficking cannot be met. *Id.*

Our review discloses that in *Commonwealth v. Pearson*, 178 A.3d 972 (Pa. Cmwlth. 2017) (unpublished memorandum), the Commonwealth argued that the $905.00 in cash was subject to "common law" forfeiture. *Id.* (unpublished memorandum at 1). The Commonwealth Court, however, concluded that the Commonwealth's forfeiture claim was "neither initiated under, nor authorized by statute[.]" *Id.* Specifically, the Commonwealth Court explained that common law forfeiture does not exist in Pennsylvania, and that "the Crimes Code does not authorize forfeiture as a sanction for this criminal conviction." *Id.* (unpublished memorandum at 6). The Commonwealth Court declined to allow forfeiture of the funds based upon Pearson's conviction of human trafficking, as the Commonwealth did not allege, in its forfeiture Motion, that the funds were connected to human trafficking. *Id.* (unpublished memorandum at 7). Contrary to Pearson's

claim, the Commonwealth Court's decision did not address the relevance or admissibility of such evidence during Pearson's criminal trial. Therefore, Pearson's claim in this regard lacks merit.

Finally, Pearson claims that his standby counsel rendered ineffective assistance during the cross-examination of Favazza, "by failing to impeach for possible granted lenience on behalf of the Commonwealth by dismissing pending charges" against her. Brief for Appellant at 12 (unnumbered). Pearson also asserts that standby counsel was ineffective for failing to raise "case specific arguments of legal insufficiency," "or that police lack probable cause to effectuate a warrantless arrest for the charge of promoting prostitution on 3-12-15[.]" *Id.* Pearson also argues that certain hearsay evidence was not sufficient to proceed to trial, and that he was denied his right to challenge the affidavit of probable cause. *Id.*

To the extent that Pearson is asserting ineffective assistance of standby counsel the law is clear:

> When a defendant elects to proceed at trial *pro se*, the defendant—and not standby counsel—is in fact counsel of record and is responsible for trying the case. This understanding of the limited role of standby counsel is essential to satisfy the United States Supreme Court's directive that a defendant's choice to proceed *pro se* "must be honored out of 'that respect for the individual which is the lifeblood of the law[,]'" even when the defendant acts to his or her own detriment. [**Faretta v. California**, 422 U.S. 806, 834 (1975).] This understanding also underlies [the Pennsylvania Supreme Court's] prior holding that a defendant who chooses to represent himself cannot obtain relief by raising a claim of ineffectiveness of counsel or standby counsel.

***Commonwealth v. Spotz***, 47 A.3d 63, 83 (Pa. 2012) (some citations omitted). Thus, we cannot grant Pearson relief on his claims of ineffective assistance by standby counsel.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/19