J-S18031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOVON JAVAR DESHIELDS | : | |
| | : | |
| Appellant | : | No. 1606 MDA 2019 |

Appeal from the PCRA Order Entered September 9, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006613-2010

BEFORE:   KUNSELMAN, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MAY 12, 2020**

Appellant, Jovon Javar DeShields, appeals from the order entered in the

Court of Common Pleas of York County dismissing his first petition filed under

the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, at the

conclusion of an evidentiary hearing.   Herein, Appellant claims trial counsel

rendered ineffective assistance by failing to convey the Commonwealth's plea

offer and pursue an alibi witness.   We affirm.

In this Court's memorandum decision affirming judgment of sentence,

we set forth the underlying facts and procedural history of Appellant's case in

the direct appeal phase, as follows:

> On August 21, 2010, the victim, Rose Bosley, arrived at the York
> City Police Station with a gunshot wound to her abdomen, and
> was transported to York City Hospital for treatment.   Affidavit of
> Probable Cause, 9/28/10.   Ms. Bosley informed the police that she

---

[*] Former Justice specially assigned to the Superior Court.

had arranged to buy crack cocaine in York City, and met her supplier in the area of 17 West Maple Street. N.T., 5/7–10/12, at 166–187. Ms. Bosley had previously been involved in two hostile encounters with Appellant in the area of West Maple Street. *Id.*

After meeting with her supplier, Ms. Bosley was preparing to leave the area when Appellant approached her car. *Id.* Ms. Bosley, who recognized Appellant from her previous encounters with him, saw Appellant reach for his waistband, and heard Appellant say "remember me" before he pointed a gun at her and fired. *Id.* Ms. Bosley managed to drive away from the scene to the police station. *Id.* Ms. Bosley was shot once in the stomach, and her car was shot approximately two more times as she drove away. Affidavit of Probable Cause, 9/28/10.

Based on information provided by Ms. Bosley, York City Police Detective Anthony Fetrow prepared a photographic lineup, and Ms. Bosley identified Appellant as the shooter. Appellant was subsequently arrested and charged with [attempted murder, two counts of aggravated assault, possession of a firearm by a minor, and carrying a firearm without a license.[1]].

Appellant was fifteen years old at the time of the shooting. On April 13, 2011, he filed a petition to transfer the case from the jurisdiction of criminal court to juvenile court. On September 15, 2011, the trial court denied Appellant's petition. A jury trial commenced on May 7, 2012[, at which time Appellant was 17 years old]. The jury rendered their verdicts on May 10, 2012. On June 20, 2012, the trial court sentenced Appellant to twelve to twenty-four years of imprisonment.

***Commonwealth v. Deshields***, No. 1545 MDA 2012, 2013 WL 11274837, at *1 (Pa.Super. Apr. 19, 2013). Subsequent to our decision and order, Appellant filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which denied his petition.

---

[1] 18 Pa.C.S.A. §§ 901(a) and 2502(a); 2702(a)(1) and (4); 6110.1(a); and 6106(a)(1).

On October 10, 2017, Appellant filed a timely first PCRA petition raising, *inter alia,* the two ineffectiveness issues presently before this Court. The PCRA court appointed counsel, who filed an amended PCRA petition on June 29, 2018.

On August 2, 2019, the PCRA court presided over an evidentiary hearing at which trial counsel, Appellant, and the purported alibi witness provided testimony. At the conclusion of the hearing, the PCRA court discredited Appellant's testimony accusing counsel of never having conveyed the Commonwealth's plea offers, and concomitantly found credible counsel's specific recollection of discussing plea offers with both Appellant and his family. In addition, the court concluded Appellant's alibi witness' vague and nonspecific testimony failed to supply an actual alibi. Accordingly, the court denied Appellant relief and dismissed his petition. This timely appeal followed.

"[W]e review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." ***Commonwealth v. Orlando***, 156 A.3d 1274, 1280 (Pa.Super. 2017) (quoting ***Commonwealth v. Treiber***, 632 Pa. 449, 121 A.3d 435, 444 (2015)). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. ***Commonwealth v. Abu–Jamal***, 720 A.2d 79, 99 (Pa. 1998). A PCRA court's legal conclusions, however, are reviewed *de novo*. ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011).

We presume that the petitioner's counsel was effective, and a petitioner bears the burden of proving otherwise. ***Commonwealth v. Williams***, 732 A.2d 1167, 1177 (Pa. 1999). In assessing Appellant's ineffectiveness claim, we apply the well-settled test enunciated in ***Strickland v. Washington***, 466 U.S. 668 (1984) and adopted in ***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987):

> To prevail on an ineffectiveness claim, appellant must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

***Commonwealth v. Fears***, 86 A.3d 795, 804 (Pa. 2014). The failure to prove any one prong is cause alone for dismissal of the claim without the need to determine whether the other two prongs have been met. ***Commonwealth v. Basemore***, 744 A.2d 717 (Pa. 2000).

In Appellant's first issue, he contends trial counsel failed altogether to advise him of the Commonwealth's plea offer of 3 to 10 years, which he says he would have accepted had he known of the offer. Instead, because of counsel's ineffectiveness, he is serving a sentence three times greater than what was offered.

This Court has recognized "it is evident that incorrect advice or failing to properly advise a client can be grounds for an ineffectiveness claim." ***Commonwealth v. Markowitz***, 32 A.3d 706, 716 (Pa.Super. 2011) (citing ***Commonwealth v. Lantzy***, 736 A.2d 564, 572 (Pa. 1999); ***Commonwealth***

*v. Boyd*, 688 A.2d 1172, 1175 (Pa. 1997) (failure to properly explain the advantages and disadvantages of accepting or rejecting a plea offer may be ineffective assistance of counsel), *overruled on other grounds,* ***Commonwealth ex rel. Dadario v. Goldberg***, 565 Pa. 280, 773 A.2d 126 (2001)).

At the PCRA evidentiary hearing below, Appellant testified that trial counsel had come to see him only three times while in pre-trial detention, and with just five days left before trial, counsel sent him a letter summarizing pretrial proceedings to-date and explaining defense strategy. N.T. 8/2/19, at 50. According to Appellant, the letter represented the first time he learned the Commonwealth had offered a plea deal of 3 to 10 years' incarceration.[2]

Citing his young age at the time, Appellant testified he did not understand what a plea offer even meant when he read the letter. N.T. at 51. He maintained it was not until the day of trial that he had an opportunity to ask trial counsel about the offer, but trial counsel told him the deal "was off the table." N.T. at 51-52. Had counsel informed him earlier about the deal, Appellant insisted, he would have accepted it. N.T. at 52.

On cross-examination, the Commonwealth explored Appellant's claim that he was unfamiliar with the practice of plea dealings, and it confirmed Appellant previously had been charged criminally and processed before, albeit

---

[2] Counsel's letter discussed two plea offers, one for 3 to 10 years and a subsequent one for 1 to 4 years, which the Commonwealth apparently had offered in the wake of its concerns about the victim contacting Appellant's aunt but then had retracted immediately thereafter.

it disposition was ultimately in the juvenile system, such that he had "some awareness of how the system works." N.T. at 53-54. The Commonwealth also confirmed that Appellant received counsel's letter five days before trial, and it asked if he ever attempted to contact counsel regarding the plea offers. Appellant maintained he did not have the opportunity to do so. N.T. at 55.

Trial counsel's testimony contradicted Appellant's assertions. Specifically, counsel testified that he maintained frequent contact with Appellant's mother and grandmother at his office and visited Appellant at the prison an estimated "dozen times." N.T. at 7-8. Counsel described going to the prison often as the trial date approached:

> **Trial Counsel**: I do know towards – right before trial the issue came in with – the victim left some crazy message on an aunt's voicemail. I remember I was out a lot [to the prison] then because we were talking about the last offer that got revoked by the Commonwealth and making sure that – is it going to be a plea, is it not going to be a plea, all right, we're going to go to trial, how are we going to frame it, and everything else.

N.T. at 9.

Counsel also averred that he conveyed to Appellant, his mother, and grandmother the Commonwealth's 3 to 10 year plea deal, which he further maintained had been offered even before he succeeded prior counsel in representing Appellant. N.T. at 10-11. Specifically, counsel testified:

> **PCRA Counsel:** Attorney Gross [trial counsel], were there plea deals in this case?
>
> **Trial Counsel**: The one that was right from the beginning, and that's the one that was offered, I think, even to [prior trial counsel], was a 3 to 10 time period, and that was not acceptable,

No. 1, by Mr. DeShields [Appellant]. And to be fair, I talked to his parents, his mother and grandmother the most on that because he would always be, ["]What does my family want me to do?["], you know, because he's young. It was always, ["]He didn't do it,["] ["]He wasn't involved,["] so the offer was rejected. And Mr. DeShields still said that he wasn't involved, he didn't do it, he wasn't there when Miss Bosley was shot on the day – the day she was shot.

**PCRA Counsel**: So it's your testimony that the first time you brought a 3 to 10 offer to Mr. DeShields, who was 17 at the time, was not in the letter you wrote him on April 27th?

**Trial Counsel:** No. There was that offer before for 3 to 10 that, you know, I talked – I can't even say when, but it was an offer.

. . .

The only time it went to something different was when Dave Sunday came to me and said, hey, why don't we do a 1 to 2 or 1 to 3, something in that time period, because Ms. Bosley left a really highly impaired voicemail on I believe it was Jovon's aunt's answering machine, and unfortunately that got revoked . . . .

I remember when I first got that offer, I remember I talked on my cell number to his mother, grandmother, then also I went out. I was excited, talked to Jovon about that. But then before we could even get into court, that was revoked.

. . .

**PCRA Counsel**: So you would have written the letter and gone to see him?

**Trial Counsel**: Right. The letter is – I know I had already talked to him in person about the offer and being revoked. This letter is what I like to call CYA, which is I like to cover myself, which is, hey, by the way, it's in writing, it's going out to the prison so you have a copy, and then I talk to him as well and family.

**PCRA Counsel**: Attorney Gross, the second paragraph in your letter, it's the second to last sentence . . . starts with, "I feel . . . ." Could you read that sentence?

**Trial Counsel**: Absolutely. I feel very confident about our success in the case, yet the DA is still only offering a 3 to 10-year sentence. As such, I see we are going to trial. If you are convicted, then you do face a 20 to 40-year sentence on the most serious charge of attempted homicide.

**PCRA Counsel**: So the first sentence I had you read, you would agree that that is more or less promising an outcome.

**Trial Counsel**: No. Looking for my opinion. I do feel confident. He said he didn't do it. I felt very confident that we could present a good defense to the case.

You can't promise anything. I really think a 3 to 10 would have been a great resolution; but if the Defendant and family don't accept it, I can't make somebody – I can't force somebody to plead 'cause then I get PCRA'd for voluntariness and forcing a client to plead.

. . .

**PCRA Counsel**: Is it possible that your confidence in the outcome could have led Mr. Deshields to pursue trial?

**Trial Counsel**: Absolutely not. Unfortunately, a lot of people tell me, why aren't you fighting for me, or aren't you going to, like – why are you trying to make me plead to something I didn't do, because when you plead guilty or no contest, you have the control over what happens. And Jovon [Appellant] was 17. Even with a 3 to 10, he'd still be out in his early 20s.

But it's – it was rejected. Therefore, we went to trial. I would much rather not have to go through a trial and resolve it with a negotiated plea.

N.T. at 11-12, 15-16, 20.

At the close of evidence, the PCRA court indicated it found trial counsel's testimony credible, such that it rejected Appellant's allegation that counsel failed to inform him of the Commonwealth's plea offers:

**PCRA Court**: The offers are conveyed in the letter of April 27, 2012, so as the Commonwealth indicated, under the law, the fact that an offer was made was conveyed to [Appellant].

I find Attorney Gross's testimony accurate. It rings true that – and there's nothing wrong with this – that Appellant was asserting his innocence all along. He's entitled to do that. Nothing wrong with that. But that also undercuts that prejudice component of the case. If he wasn't intending to plead guilty because he thought he was innocent, that's his right. He doesn't get to have buyer's remorse later on and say, gee, I should have taken that deal, and then try to lay it at the feet of his attorney. I see no basis for that in this case.

The Court finds that Attorney Gross did convey all plea offers to Appellant. He did to in a timely fashion. He did it with the original 3 to 10. He did it when it dropped to 1 to 2. He conveyed the withdrawal of the 1 to 2, and what he did testify truthfully to was he just wasn't sure if the 3 to 10 was still on the table the morning of the trial. He didn't testify that he didn't know the morning of the trial. He testified he didn't know here today whether that was still the case on the morning of trial.

The Court doesn't find that defense counsel was dilatory in any way in not timely communicating all plea offers, nor that he was dilatory or negligent in any way in not jumping on a great deal in a timely fashion.

[PCRA] counsel argues well, like when you get a sweetheart deal, you need to jump on it right away. Yeah. You know, the Court thinks that's a good argument. But you got to have a client who is willing to take the deal, and I don't have any evidence that that was the case in this situation.

Mr. DeShields overplayed his hand in this hearing. Some of what he testified to might have been true. When he went off on saying that, [he] didn't even know what a plea offer was, when he's 17 years old, then I'm going, okay, this guy is not just trying to set up a record to benefit himself. . . . [T]hat's the point I became convinced Mr. DeShields was just lying in his testimony, so that means I can't trust the rest of what he's saying.

Some of what else he was saying might have been true, but he was overreaching, so I can't tell when he's lying and when he's

> telling the truth, so I am not going to give credibility to his testimony.

N.T., at 70-72.

The record confirms, therefore, the PCRA found counsel testified credibly that he engaged in pre-trial discussions with Appellant regarding the Commonwealth's plea offer of 3 to 10 years' incarceration, but that it was Appellant's election to decline that offer. In contrast, the court deemed Appellant incredible as a witness, as explained in the excerpt above, and we discern no reason why the court's credibility determinations shall not be binding upon this Court. Therefore, Appellant's first ineffectiveness claim fails, as it hinged upon the court finding credible his testimony that counsel never informed him of the plea offer prior to trial.

In Appellant's second issue, he argues trial counsel was ineffective for failing to investigate and call an available alibi witness, Appellant's 16-year old cousin, Jonae DeShields, at trial. We disagree.

To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, an appellant must show: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant. *Commonwealth v. Cousar*, 154 A.3d 287, 312 (Pa. 2017) (citation omitted). "The failure to call a possible witness will not be equated with a conclusion of ineffectiveness, absent *some positive demonstration that the testimony would have been helpful to the*

*defense*." ***Commonwealth v. Jones***, 652 A.2d 386, 389 (Pa.Super. 1995). ***See also Commonwealth v. Auker***, 681 A.2d 1305, 1319 (Pa. 1996) ("A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves a matter of trial strategy").

Likewise, "[t]he failure to call a possible *alibi* witness is not *per se* ineffective assistance of counsel." ***Commonwealth v. Williams***, 418 A.2d 499, 503, (Pa. Super. 1980) (citations omitted). "It is only where it is shown that a defendant has informed his attorney of the existence of an alibi witness and trial counsel, without investigation and without adequate explanation, fails to call the witness at trial that counsel will be deemed ineffective." ***Id.***

According to Appellant, Ms. DeShields testified at the PCRA hearing that she was with Appellant on the date and time of the incident. She also testified, he maintains, that she told trial counsel that she was able and willing to testify on Appellant's behalf, and she appeared at Appellant's trial but was not called to the witness stand.

The PCRA court, however, determined that Ms. Deshields' testimony "did not provide the PCRA Court with even a *de minimis* amount of information necessary to determine whether Jonae Deshields' testimony could have provided an alibi for Appellant." Opinion at 2. Ms. Deshields never spoke to what Appellant was doing at the time the victim in the case *sub judice* was shot. Instead, the court notes, "[s]he merely testified as to being available to testify, without stating the substance of her supposed alibi. Accordingly, there are no facts on the PCRA hearing record that an alibi existed. As such, the

Court cannot conclude that defense counsel erred in not calling Ms. DeShields." *Id*.

The notes of testimony from the PCRA hearing support the court's observation that particular details necessary to establish the ineffectiveness claim at issue were lacking. Specifically, Jonae Deshields testified on direct examination as follows:

> PCRA Counsel: [D]o you remember having discussions with [trial counsel]?
>
> Ms. Deshields: Yes.
>
> PCRA Counsel: And what were those discussions regarding?
>
> Ms. Deshields: He was asking me about the day – the night of the situation that happened with Jovon. He was asking me what we were doing, how old was I, what time was it, things like that.
>
> PCRA Counsel: And what was your explanation to [trial counsel]?
>
> Ms. Deshields: I told him everything. I told him what time it was, where we was at, the date, what was happening.
>
> PCRA Counsel: Did you tell [trial counsel] that you were willing to testify to those --
>
> Ms. Deshields: Yes. Um-hum.
>
> PCRA Counsel: --facts?
>
> Ms. Deshields: Yes.
>
> PCRA Counsel: And what, if anything, was [trial counsel's] reaction?
>
> Ms. Deshields: He said I will come on the stand and talk at the trial.

. . .

PCRA Counsel:  Were you present for the trial?

Ms. Deshields:     Yes, I was.

But you did not testify?

Ms. Deshields:     No, I didn't.

N.T. at 42-43.

On cross-examination, Ms. Deshields acknowledged that she never approached Appellant's first trial lawyer with her alibi testimony, nor did she add any particular facts placing Appellant in her company at the time of the shooting.  N.T. at 44-45.

For his part, trial counsel did not recall anyone coming forward with a "real" or "true" alibi.  N.T. at 18.  Counsel remembered Ms. Deshields attending trial, but he did not remember her offering an alibi in which she said Appellant wasn't at the scene of the crime but was with her, instead.

"It would be great if there was an alibi specifically that could say that[,]" counsel stated.  "I would have loved it if it was actually true, you know, that she could physically say [that], then she would be subpoenaed, and her parent would have to come to court."  N.T. at 19.

Presented with this record, the PCRA court reasonably concluded Appellant failed to establish, at the very least, that he was prejudiced by the absence of Ms. Deshield's testimony at his trial.  Without offering any facts at the PCRA hearing to substantiate her purported alibi for Appellant, Ms.

- 13 -

Deshields failed to show her testimony would have been helpful to Appellant at his criminal trial. Accordingly, the PCRA court did not err in declining to hold trial counsel ineffective for electing against presenting Ms. Deshields as an alibi witness.

For the foregoing reasons, we affirm the order denying Appellant PCRA relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/12/2020