J-S03020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID ANTHONY | : | |
| | : | |
| Appellant | : | No. 718 WDA 2020 |

Appeal from the PCRA Order Entered June 29, 2020
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000109-2017

BEFORE: DUBOW, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MURRAY, J.: **FILED FEBRUARY 24, 2021**

David Anthony (Appellant) appeals from the order denying, after a hearing, his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful consideration, we affirm.

A jury convicted Appellant of three counts each of delivery of a controlled substance and possession of a controlled substance. On March 15, 2017, the trial court sentenced Appellant to an aggregate five to 15 years in prison. Appellant filed a direct appeal, and this Court affirmed his judgment of sentence. ***Commonwealth v. Anthony***, No. 578 WDA 2017 (Pa. Super. Dec. 27, 2018) (unpublished memorandum).

Appellant filed a timely *pro se* PCRA petition on December 26, 2019. The court appointed counsel, who filed an amended PCRA petition on March

_____

[*] Retired Senior Judge assigned to the Superior Court.

17, 2020. On March 18, 2020, the court scheduled an evidentiary hearing for June 16, 2020. On June 29, 2020, the court entered an order denying relief. Appellant filed this timely appeal. The PCRA court and Appellant have complied with Pa.R.A.P. 1925.

Appellant presents a single issue for review:

Was [Appellant]'s trial counsel ineffective, and [Appellant] thereby prejudiced, for failing to withdraw from representation of [Appellant], due to a conflict of interest, where trial counsel had previous to [Appellant]'s trial, and subsequent to said trial, represented a Commonwealth witness who testified against [Appellant] at [Appellant]'s trial?

Appellant's Brief at 3.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. *Commonwealth v. Hernandez*, 79 A.3d 649, 651 (Pa. Super. 2013). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.*

With regard to a petitioner's claim of Trial Counsel's ineffectiveness:

It is well-settled that counsel is presumed to have been ineffective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. A PCRA petitioner must address each of these prongs on appeal. A petitioner's failure to satisfy any prong of this test is fatal to the claim.

*Commonwealth v. Wholaver,* 177 A.3d 136, 144 (Pa. 2018) (citations omitted).

With regard to Appellant's claim that Trial Counsel was ineffective due to a conflict of interest, our Supreme Court has held that an appellant cannot succeed on a conflict of interest claim absent a showing of actual prejudice. *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1147 (Pa. 2012). Prejudice is presumed "when the appellant shows that trial counsel was burdened by an actual—rather than mere potential—conflict of interest. To show an actual conflict of interest, the appellant must demonstrate that: (1) counsel actively represented conflicting interests; and (2) those conflicting interests adversely affected his lawyer's performance." *Id.* (citation and internal quotation marks omitted); *see also Commonwealth v. Padilla*, 80 A.3d 1238, 1248 (Pa. 2013) (to establish actual conflict, appellant must show counsel actively represented conflicting interests and actual conflict adversely affected counsel's performance). In *Commonwealth v. Williams,* 980 A.2d 510, 522 (Pa. 2009), our Supreme Court cited the United States Supreme Court in *Mickens v. Taylor,* 535 U.S. 162, 171, 122 S.Ct. 1237, 1243, 152 L.Ed.2d 291 (2002), for the definition of "actual conflict of interest" as a "conflict of interest that adversely affects counsel's performance."

The Pennsylvania Supreme Court has stated,

> in focusing on the "active" nature of the conflict, the Court's concern centers primarily on the potential for an attorney to alter his trial strategy due to extrinsic considerations stemming from other loyalties, thereby distorting counsel's strategic or tactical

decisions in a manner that would not occur if counsel's sole loyalty were to the defendant. In this vein, courts sometimes assess adverse effect by questioning whether the record shows that counsel "pulled his punches," *i.e.*, failed to represent the defendant as vigorously as he might have done had there been no conflict.

***Commonwealth v. King***, 57 A.3d 607, 619 (Pa. 2012) (citations omitted).

Further,

the United States Supreme Court "has noted an actual conflict of interest is one which adversely affects counsel's performance." ***See Cuyler v. Sullivan***, 446 U.S. 335, 346–48, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) ("We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his counsel's performance.").

***Commonwealth v. Cousar***, 154 A.3d 287, 310 (Pa. 2017).

Instantly, the PCRA court — who also sat as the trial court — accurately recited the underlying facts and procedure that are critical to our review of Appellant's ineffectiveness issue. The PCRA court explained:

[Trial Counsel] entered his appearance on October 19, 2016 to represent [Appellant] at CP-33-CR-415-2016 and CP-33-CR-416-2016 on charges stemming from two controlled heroin buys between him and Rebecca Grieneisen ("Grieneisen"). Those transactions were alleged to have occurred at 100 Brown Street in Reynoldsville, PA on April 4, 2016 and April 6, 2016.

At the time he entered his appearance for [Appellant], [Trial Counsel] was also counsel of record for David Berouty ("Berouty") at CP-33-CR-505-2016 and CP-33-CR-506-2016. Like [Appellant]'s, Berouty's charges arose from two drug transactions with Grieneisen. Both were alleged to have occurred on October 9, 2015, though, and both took place inside of Berouty's car in a school parking lot. The only factual overlap between the two defendants' cases was that Grieneisen was the confidential

- 4 -

informant and Officer Tammy Murray her handler. [Trial Counsel] thus had no reason to surmise from the facts alone that Berouty had ties to [Appellant].

What [Trial Counsel] did know was that the discovery in [Appellant]'s cases connected [Appellant] to a man named Vinny. Having only ever known and referred to Berouty as "David," [Trial C]ounsel was unaware until shortly before trial that "David" and "Vinny" were the same person. Once it was brought to his attention, however, [Trial Counsel] filed motions for leave to withdraw from Berouty's cases, noting that he had learned "through discussion with each client" that there existed a conflict between the two and that he was "unable to represent both Defendants at trial." Testifying at the PCRA hearing, [Trial Counsel] did not recall what discussions he was referencing. He knew, though, that [Appellant] was headed for trial and did not yet know what Berouty would decide to do.

No longer counsel for Berouty as of February 7, 2017, [Trial Counsel] was no longer at risk for becoming conflicted out of [Appellant]'s cases and thus had no reason to move to withdraw from them. [Appellant] was scheduled for trial the next month to answer two sets of facts substantively divorced from those on which Berouty was being prosecuted. Having never discussed [Appellant]'s cases with Berouty, moreover, [Trial Counsel] had not learned from his former client anything that might prejudice his relationship with or ability to zealously represent [Appellant]. That did not change when the scope of [Appellant's] case changed a few days before trial.

With the new charges added, Berouty became more than just [Trial Counsel's] former client; he became an adverse witness the attorney would have to cross-examine. Because of the prior representation, though, a thorough cross would require the attorney to breach his continuing ethical duty to keep confidential certain information he had learned before withdrawing from Berouty's cases. For that reason, the [trial c]ourt appointed Michael Marshall, Esq. as co-counsel for the limited purpose of cross-examining Berouty at trial and instructed [Trial Counsel] to erect the proverbial "Chinese wall" between them.

Clear through trial, then, the only actual conflict was between [Trial Counsel] and Berouty, and because [Trial Counsel] took appropriate steps to eliminate that conflict, he concurrently

- 5 -

ensured that his representation of Berouty would not create a conflict between him and [Appellant].

PCRA Court Opinion, 6/29/20, at 1-3 (footnote omitted).

Appellant argues Trial Counsel had a "concurrent conflict of interest and, **if [Appellant]'s testimony is to be believed**, he never gave [Trial Counsel] his informed consent to continue representing him. [Trial Counsel] merely told [Appellant] that it was nothing for him to worry about." Appellant's Brief at 15 (bold emphasis added).[1] Appellant continues, "Albeit [Trial Counsel] testified that he disclosed the conflict to [Appellant] and [Appellant] waived that conflict." *Id.* at 15-16. At this juncture, we emphasize that the PCRA court's credibility determinations, when supported by the record, are binding on the appellate court." ***Commonwealth v. Spotz****,* 18 A.3d 244, 259 (Pa. 2011) (citation omitted).

Witness credibility aside, Appellant maintains Trial Counsel "had no reasonable basis for failing to motion the court to withdraw from [Appellant]'s case once he became aware of the conflict between [Appellant] and Berouty." ***Id.*** at 19. He asserts "there was an 'actual conflict', in which case prejudice is presumed," and "[a]s a result, [Appellant] has satisfied by a preponderance of the evidence all three prongs of his ineffectiveness claim and is entitled to

---

[1] In his concise statement, Appellant stated "that his conflicted trial counsel's continued representation of defendant, **without even advising [him] of said conflict**, prejudiced him and he therefore [*sic*] entitled to a new trial." Pa.R.A.P. 1925(b) Statement of Errors, 7/23/20, at 2 (bold emphasis added).

a new trial." *Id.* at 19-20. Appellant acknowledges that it was his burden to establish that Trial Counsel "actively represented conflicting interests," and those conflicting interests "adversely affected" Trial Counsel' performance. Appellant's Brief at 12 (citing ***Commonwealth v. Collins***, 957 A.2d 237, 251 (Pa. 2008)). However, Appellant does not describe or explain the requisite "adverse effect" — including how Trial Counsel failed to represent him "as vigorously as he might have done had there been no conflict from the alleged conflict." ***King***, 57 A.3d at 619.

Conversely, the PCRA court, after the evidentiary hearing, took the matter under advisement, and approximately two weeks later, issued an order and opinion in which it denied relief, and concluded Appellant failed to establish that Trial Counsel's "interests diverged with respect to a material factual or legal issue or to a course of action the attorney took or did not take as a result of the conflict." PCRA Court Opinion, 6/29/20, at 3, citing ***Commonwealth v. Collins***, 957 A.2 237, 251 (Pa. 2008).

Appellant and Trial Counsel were the only witnesses to testify at the PCRA hearing.[2] The parties stipulated that David Berouty was deceased. N.T.,

---

[2] Appellant raised numerous claims of Trial Counsel's ineffectiveness that were explored and to which the both witnesses testified; however, Appellant's claim of Trial Counsel's ineffectiveness due to a conflict of interest is the only argument he presents on appeal. ***See*** Pa.R.A.P. 1925(b) Statement of Errors, 7/23/20; ***see also*** Appellant's Brief at 3.

6/16/20, at 3. The following exchange occurred during PCRA Counsel's direct examination of Appellant:

> COUNSEL: [Appellant], did [Trial Counsel] talk to you about why [Attorney] Mike Marshall was questioning Mr. Berouty [during trial]?
>
> APPELLANT: He said that – his words were pretty well exactly, I'm just having him question him because I don't want there to be any kind of conflict.
>
> COUNSEL: Did he explain what conflict, if any, there would be?
>
> APPELLANT: No, not whatsoever. He said it was nothing for me to worry about.
>
> COUNSEL: Were you aware of what that conflict was?
>
> APPELLANT: No, not until I started hearing all the other things once I got put in prison from all the other people that were involved in the drug cases.

N.T., 6/16/20, at 8.

On cross-examination, Appellant testified that Trial Counsel never advised him of his dual representation of Appellant and Mr. Berouty. *Id.* at 23. However, he also responded when asked by the Commonwealth:

> Q. Did [Trial Counsel] explain what Mr. Marshall was there for?
>
> A. Yeah. He said he was there. He was going to ask Dave Berouty a couple of questions if he needed to.
>
> Q. Did you find that odd?
>
> A. Yes, I did find that odd. . . . and I even asked him. I said, why is he questioning him? And he said it's -- it's no concern or anything to affect you now. It's just about something I'm doing or something.

*Id.* at 23-24.

Next, PCRA Counsel called Trial Counsel, who testified to exclusively practicing criminal law. *Id.* at 27. Trial Counsel confirmed that he withdrew from representing David Berouty in February 2017, prior to Appellant's trial, due to his representation of Appellant. *Id.* at 32. He also testified that after Appellant's trial and conviction, he withdrew from another case where he represented Mr. Berouty, "probably" as a result of having represented Appellant. *Id.* However, when PCRA Counsel asked, "In your motion [to withdraw], you say through discussion. Do you know what it was? Was one of them trying to throw the other under the bus or--?" Trial Counsel replied, "No, I -- I had absolutely no discussions with Mr. Berouty regarding [Appellant's] case. So it wasn't that, but I can't remember what it was." *Id.* at 32-33.

PCRA Counsel continued to question Trial Counsel:

Q. Why did you have [Attorney] Mike Marshall come in just for cross-examination of Mr. Berouty?

A. That was something that was discussed in chambers, and I pointed out what conflict I had, and [Appellant] was well aware of that. And the court appointed Attorney Marshall to come to court.

Q. Now, you say [Appellant] was well aware of the conflict. How did he become aware?

A. From me going to the jail and talking to him.

Q. And, again, what was the conflict?

A.      It was [Mr. Berouty] was going to be a potential witness for the Commonwealth, and I represented him on other drug cases or drug activity.

*Id.* at 33.

Trial Counsel was next questioned by the Commonwealth:

Q.      You were asked about Mr. Berouty and how you ended up withdrawing from his representation. Do you recall that in this case [Appellant] was originally only charged with two controlled buys?

A.      Yes.

Q.      And Mr. Berouty was not a witness regarding those two controlled buys?

A.      That would be right.

Q.      And at some point in time, the Commonwealth wanted to add these other charges. And in those text messages, there were repeated references to someone named Vinny.

A.      Yes.

Q.      Do you recall that?

A.      Yes.

Q.      And we determined that Vinny was David Berouty.

A.      Even though I represented Mr. Berouty, I always referred to him as David.

Q.      Yeah.

A.      I – I did not know his nickname was Vinny until it was getting close to trial.

Q.      And so does that reflect your recollection that at some point in time although you didn't understand it prior to that, at some point in time you started to realize that Mr. Berouty was a witness against [Appellant]?

A.     Right.  I think that was from one of our conferences.  One of our discussions.

N.T., 6/16/20, at 38-39.

Trial Counsel further testified:

[The trial court] said to create a Chinese wall between [Attorney] Marshall and myself.  I never discussed with Mr. Berouty anything he knew about [Appellant].  There was no discussion like that at any point.

*Id.* at 40.

The Commonwealth continued to question Trial Counsel:

Q.     [Y]ou said you disclosed this conflict to [Appellant]?

A.     Yes.

Q.     And you told him about your prior representation of Mr. Berouty.  And you said he waived the conflict?

A.     Yes, we discussed that.

Q.     He wanted you to continue to represent him?

A.     Yes.

Q.     And he did not – he did not voice any objection to you about that?

A.     No.

*Id.* at 41-42.

Finally, PCRA Counsel recalled Appellant, who unequivocally refuted Trial Counsel's testimony, stating "[t]hat never happened like that," and "why would I even say it's okay?"  *Id.* at 43.  When PCRA Counsel asked Appellant "what, if anything, [Trial Counsel told him] about a conflict he had with Mr.

Berouty?" Appellant replied: "Nothing. There was nothing about a conflict. I didn't even know he had anything to do with Dave Berouty until I went to jail . . ." *Id.* at 44.

However, when the Commonwealth questioned Appellant shortly thereafter, noting that "the record is going to reflect this one way or the other . . . I'm pretty sure your first answer . . . on direct . . . the word conflict was in your answer," Appellant stated:

> I said he said something about maybe trying to – he may have said something about trying to avoid a conflict or something. I'm not sure.

*Id.* at 45.

At the close of testimony, the PCRA court, which had also presided at Appellant's jury trial in March 2017, specifically addressed Appellant, and stated it "was going to take a look at all this, review the cases." *Id.* at 51. Thirteen days later, the PCRA court entered its order and opinion denying relief. In rejecting Appellant's ineffectiveness claim, the PCRA court first summarized the law:

> Our courts differentiate between a potential conflict and an actual conflict and only grant relief in the latter instance, in which case prejudice is presumed. *See e.g.*, *Commonwealth v. Collins*, 957 A.2d 237, 251 (Pa. 2008). To establish actual prejudice, though, a defendant must prove two things: first, that his attorney actively represented conflicting interests; and second, that his attorney's performance was adversely affected because of it. *Id.* To establish that his and the other client's interests were actually in conflict, moreover, a defendant must demonstrate that those interests diverged with respect to a material factual or legal issue or to a course of action the attorney

- 12 -

took of did not take as a result of the conflict. ***Id.*** [Appellant] has established none of these things.

PCRA Court Opinion, 6/29/20, at 3.

Turning to the facts, the court continued:

[Trial Counsel]'s timely motions to withdraw from Berouty's cases in February of 2017 meant that no actual conflict developed [between] him and [Appellant]. The charges then at issue for both defendants were completely unrelated, and by the time the Commonwealth filed the new charges against [Appellant] and added Berouty as a witness, there was no dual representation. Whereas Attorney Marshall cross-examined Berouty after he and [Trial Counsel] had appropriately limited their communication about [Appellant]'s case, moreover, **it is apparent that [Trial Counsel]'s former relationship with Berouty did not adversely affect his performance at trial**. [Appellant]'s claim regarding the purported conflict is thus without merit, and he was clearly not prejudiced by the potential conflict [Trial Counsel] averted by withdrawing as Berouty's counsel.

***Id.*** (emphasis added).

Upon review, we discern no error where the record supports the PCRA court's factual findings, and case law supports its legal conclusions. Accordingly, no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2021