J-S28006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WAYNE EUGENE BRADLEY | : | |
| | : | |
| Appellant | : | No. 293 MDA 2022 |

Appeal from the PCRA Order Entered January 21, 2022
In the Court of Common Pleas of Susquehanna County Criminal Division
at No(s): CP-58-CR-0000467-2017

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY OLSON, J.:  **FILED: OCTOBER 24, 2022**

Appellant, Wayne Eugene Bradley, appeals from the order entered January 21, 2022, dismissing his petition filed pursuant to the Post-Conviction Relief Act ("PCRA").[1]  We affirm.

On July 10, 2018, a jury found Appellant guilty of terroristic threats and simple assault[2] and not guilty of recklessly endangering another person.[3]  The trial court summarized the factual basis of Appellant's convictions as follows:

> Perry's General Contracting was working on a building project in New Milford, Pennsylvania on August 17, 2017.  One of the owners

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] 18 Pa.C.S.A. §§ 2706(a)(1), 2701(a)(3).  After trial, the trial court found Appellant guilty of the summary offense of disorderly conduct under 18 Pa.C.S.A. § 5503(a)(4).  Appellant does not challenge his summary conviction here.

[3] 18 Pa.C.S.A. § 2705.

of Perry's General Contracting [("Perry")], John Perry (hereinafter referred to as John), was at the construction site. As the Perry crew was working on the construction project, [Appellant] arrived in a tractor trailer on the public roadway adjacent to the construction project.

As [Appellant's] tractor trailer was pulling up to the construction site, [Appellant] stuck his head out of the window and began yelling at the Perry crew. After the tractor trailer stopped, [Appellant] got out, approached John and continued to scream at him. [Appellant] was carrying a metal bar which was three feet in length. As he was screaming at John, [Appellant swung] the metal bar like a baseball bat in a threatening manner. [Appellant also threatened] to "bust" John's "head open." While this was occurring, John was located on a scaffolding and was working on [a] roof.

After some give and take between the parties, [Appellant] left the construction site and went to his residence located on the other side of the street. John's brother, David Perry (hereinafter referred to as David), got down off the roof he was working on and went to move a parked truck. At that point, [Appellant] came out of his residence holding a rifle. While standing on the other side of the street, [Appellant] fired a round into the air. Although David did not see the gun pointed at him, he heard the gunshot and knew that it was close to him. After firing the weapon, [Appellant] then took aim at the back of the truck that David was operating. In response to [Appellant] aiming the rifle at his brother, John began to scream from his scaffolding. After David got out of his truck, he saw [Appellant] holding the weapon with a crazed look. David yelled to him whether he planned on shooting them and [Appellant] nodded his head in the affirmative. [Appellant] left the scene.

During his testimony, [Appellant] admitted to confronting John while holding the metal bar. [Appellant] testified that he asked John whether he wanted to move the Perry truck or whether he wanted "to see what happens" if he did not move it. When asked what he meant by these words, [Appellant] stated that "if he didn't want to move it, then it's going to be some consequences." [Appellant] testified that John responded that he wanted to see what was going to happen if the Perry truck was not moved. In response, [Appellant] walked over to his house, retrieved a deer

rifle, put one round into the chamber, walked back outside and "touched it off."

Trial Court Opinion, 1/21/22, at 3-4 (record citation omitted).

Appellant proceeded to sentencing, his judgment of sentence was affirmed by this Court, and our Supreme Court denied discretionary review. *See Commonwealth v. Bradley*, 2019 WL 4927156 (Pa. Super. 2019), *appeal denied*, 229 A.3d 232 (Pa. 2020). Thereafter, Appellant filed a timely and counseled PCRA petition, his first, on January 25, 2021. Within his petition, Appellant asserted various claims of ineffective assistance of trial counsel and a claim that he was denied a fair trial because the prosecutor improperly vouched for the credibility of Commonwealth witnesses throughout the trial. The PCRA court held an evidentiary hearing on September 1, 2021, and after briefing by the parties, denied Appellant's PCRA petition on January 21, 2022. This appeal followed.[4]

Appellant raises the following issues for our review:

I. Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that trial counsel was ineffective for failing to object to and/or request a mistrial following the Commonwealth's prejudicial opening and closing arguments?

II. Whether the PCRA court committed reversible error by dismissing [Appellant's] claim that trial counsel was ineffective for eliciting testimony from Trooper McKee vouching for the credibility of witnesses and for failing to object [when the prosecutor elicited testimony that vouched for the credibility of other witnesses]?

---

[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

III. Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that trial counsel was ineffective for failing to object to questions by the prosecutor on cross-examination that directly implicated [Appellant's] right to remain silent and/or for failing to request any remedial measures?

IV. Whether the PCRA court committed reversible error by dismissing [Appellant's] PCRA claim that he was denied his federal and state due process rights to a fair trial [because the prosecutor improperly vouched for the credibility of Commonwealth witnesses] throughout trial?

Appellant's Brief at 4 (extraneous capitalization omitted).

Our standard of review for challenges to the denial and dismissal of petitions filed pursuant to the PCRA is well-settled.

We must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019) (citations omitted). Moreover,

[t]o be entitled to PCRA relief, [an] appellant must establish, by a preponderance of the evidence, his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S.[A.] § 9543(a)(2). These errors include a constitutional violation or ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Id.*** Additionally, [an] appellant must show his claims have not been previously litigated or waived, and "the failure to litigate the issue prior to or during trial … or on direct appeal could not have been the result of any

rational strategic or tactical decision by counsel." 42 Pa.C.S.[A.] § 9543(a)(3), (a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.[A.] § 9544(a)(2). An issue is waived if appellant "could have raised it but failed to do so before trial, at trial, … on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.[A.] § 9544(b).

*Commonwealth v. Cousar*, 154 A.3d 287, 296 (Pa. 2017) (some citation omitted).

Preliminarily, we observe that Appellant's final claim involves allegations of trial court error. *See Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa. Super. 2019) (noting that an issue challenging whether the Appellant was denied a fair trial involves allegations of trial court error). As a freestanding contention unpaired to a claim alleging ineffective assistance of trial counsel, this issue is not properly before us. *See id.*, *quoting Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 780 (Pa. Super. 2015) (*en banc*) ("At the PCRA stage, claims of trial court error are either previously litigated (if raised on direct appeal) or waived (if not)."). Consequently, Appellant is not entitled to relief on this claim.

Appellant's remaining claims all involve allegations of the ineffective assistance of trial counsel.

Counsel is presumed to be effective, and the petitioner bears the burden of proving that counsel's assistance was ineffective by a preponderance of the evidence. To prevail on a claim of ineffective assistance of counsel, the petitioner must plead and prove the following three elements: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) petitioner suffered prejudice as a result

- 5 -

of counsel's action or inaction. To establish prejudice, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Because a petitioner's failure to satisfy any of the above-mentioned elements is dispositive of the entire claim, a court need not analyze the elements in any particular order. Failure to satisfy one element is dipositive.

*Commonwealth v. Hairston*, 249 A.3d 1046, 1061–1062 (Pa. 2021) (internal citations omitted).

We review Appellant's three ineffectiveness challenges together and proceed directly to the "prejudice" prong of the ineffectiveness analysis. Assuming *arguendo*, and without deciding, that Appellant could demonstrate each claim held arguable merit and trial counsel had no reasonable basis for the course he chose, Appellant cannot demonstrate that such deficient performance by trial counsel prejudiced him in light of the overwhelming evidence adduced at trial. More specifically, and as explained in detail below, Appellant's own testimony, by itself, provided the necessary factual basis to sustain his convictions for terroristic threats and simple assault. Consequently, Appellant's claims warrant no relief.

The jury convicted Appellant of terroristic threats and simple assault. The Crimes Code defines these crimes, in relevant part, as follows:

### § 2706 Terroristic threats

(a) **Offense defined**. - - A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

   (1) commit any crime of violence with intent to terrorize another[.]

> **§ 2701. Simple assault**
>
> (a) **Offense defined**. - - Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
>
> *   *   *
>
> (3) attempts by physical menace to put another in fear of imminent serious bodily injury[.]

18 Pa.C.S.A. §§ 2706(a)(1), 2701(a)(3).

Through his own testimony at trial, Appellant conceded the following material facts. Appellant had several previous confrontations with construction workers who parked their vehicles and equipment in a way that obstructed his ability to maneuver his tractor trailers into and out of his property. N.T. Jury Trial, 7/10/18, at 181-183. On August 17, 2017, upon returning to his property in a tractor trailer, Appellant saw a truck parked across the street from his property that would hinder his ability to back into his driveway. ***Id.*** at 184. He then testified:

> I got out of [] our truck, **I took the [metal] bar off the floor** the- - of the truck and I walked into the job site. As I walked, I - - I couldn't see anybody and I thought, you know, where is everybody. So I walked down pretty near to the first building and then I noticed that there were people on the back side of the roof putting down shingles. **I said to this guy right here,** he was on the small part of the porch [referring to John Perry], **you want to move the truck or do you want to see what happens if you don't?** He told me he wanted to see what happens if I don't. **So from there, I walked back across the street and I walked in the house, got my father's deer rifle, put one bullet in it, come out in the driveway and touched it off.**

*Id.* at 184-185 (emphasis added). Appellant further testified in the following exchanges:

> Q: You were angry that day though, weren't you?
>
> A: Absolutely.
>
> Q: And you were angry because that truck was in your way.
>
> A: Exactly.
>
> Q: And so when you talked to John Perry and you have the - - - you have the bar with you, you intended to threaten him with it, didn't you?
>
> A: Only because he was up there with a[n] air-powered staple gun pointing at me.

*Id.* at 198.

> Q: Sir, what did you mean when you said to [David] Perry, ["]move it or you'll see what happens if you don't?["]
>
> A: Precisely what I did tell him. He - -
>
> Q: That is what you told him but what did you mean by that?
>
> A: I meant that if he didn't want to move it, then it's going to be some consequences.
>
> Q: And what consequences did you intend that day?
>
> A: I went and got that gun.

*Id.* at 192-193.

> Q: So, [Appellant], what was the point of bringing the gun out and shooting it into the air?
>
> A. Getting their attention.
>
> Q: Okay. Why did you want to get their attention?

A: I want that truck moved.

*Id.* at 196-197.  Appellant denied pointing the gun at the truck David Perry occupied, explaining "there was no reason to be pointing a gun at anybody" because "he was doing what needed to happen, he was moving the truck[.]" *Id.* at 185.

Appellant's testimony alone established sufficient facts to support his guilt.  Appellant conceded that he threatened David and John Perry with "consequences" if they did not comply with his demands to move their truck, openly wielded a metal bar and hunting rifle while making these threats, discharged the rifle as means of confirming potential violent consequences of noncompliance, and ceased his menacing behavior only after the Perry brothers did what Appellant asked.  Consequently, Appellant cannot prove that, but for any errors of trial counsel alleged within the PCRA petition, the outcome of Appellant's criminal trial would have been different.  Thus, Appellant cannot establish prejudice.  Relatedly, Appellant cannot explain how defense counsel's alleged ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place," where Appellant himself conceded the material facts necessary to establish guilt.  *See* 42 Pa.C.S.A. § 9543(a)(2).  Accordingly, we conclude the PCRA court correctly determined that Appellant's claims merit no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/24/2022</u>